# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

SHARON ANN JENKINS,
        *Defendant-Appellee.*

No. 06-50049

D.C. No.
CR-05-00698-RTB

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted
February 15, 2007—Pasadena, California

Filed July 17, 2007
Amended September 25, 2007

Before: William C. Canby, Jr. and Sidney R. Thomas,
Circuit Judges, and Suzanne B. Conlon,* District Judge.

Opinion by Judge Canby;
Partial Dissent by Judge Conlon

---

*The Honorable Suzanne B. Conlon, Senior United States District
Judge for the Northern District of Illinois, sitting by designation.

**COUNSEL**

Bruce R. Castetter, Neville S. Hedley, Assistant United States Attorneys, San Diego, California, for the plaintiff-appellant.

Martin G. Molina, San Diego, California, for the defendant-appellee.

**ORDER**

The majority opinion filed by this court on July 17, 2007, slip op. at 8677, is amended as follows:

At slip op. p. 8687, delete the second and third sentences on the page and the included citations and parentheticals (thus deleting the material beginning "The fact that separate charges . . ." and ending ". . . from associated individuals."), and insert the following passage in place of the deleted passage:[1]

> The government relies on *United States v. Martinez*, 785 F.2d 663 (9th Cir. 1986). *Martinez* cited *United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir.

---

[1]The passage to be amended may also be found at 2007 WL 2034037 *4, second paragraph with headnote number [9].

1981), for the proposition that, if a second charge is unrelated to the first, a presumption of vindictiveness does not arise. *Martinez*, 785 F.2d at 669. *Robison*, however, made clear that relatedness of the charges "is neither dispositive nor essential to prove vindictiveness." *Robison*, 644 F.2d at 1272 (citations omitted); *accord Groves*, 571 F.2d at 454 (stating that the fact that a second charge is unrelated is not "controlling in any case" or "dispositive on the question of vindictiveness"). Although *Martinez* certainly supports the proposition that the mere filing of a second, unrelated charge after a first charge does not give rise to a presumption of vindictiveness, we do not read *Martinez* as holding that a presumption of vindictiveness can *never* arise when the second charge is unrelated to the first. And *Martinez* depended in large part on the fact that "Martinez could have exercised no right in the [first] Colorado trial that would have affected the [subsequent] Arizona indictment." *Martinez*, 785 F.2d at 670; *see also Robison*, 644 F.2d at 1272 (finding that "Robison has failed to demonstrate any connection between the exercise of procedural rights in prior prosecutions and the federal prosecution challenged here."). Here, in contrast, Jenkins' exercise of her right to testify that she thought she was once again smuggling aliens can easily be viewed as triggering the filing of the alien smuggling charges.

The petition of the United States for rehearing en banc is pending and has not been ruled on. No additional petitions for rehearing may be filed because of this amendment.

---

## OPINION

CANBY, Circuit Judge:

The United States appeals the district court's dismissal of an indictment of Sharon Ann Jenkins for alien smuggling. The

ground of dismissal was the appearance of vindictive prosecution.

Jenkins was apprehended twice for attempting to cross the U.S.-Mexico border while driving a vehicle containing undocumented aliens. Both times, Jenkins stated that she had been paid to drive the car across the border. She was not charged with any crime. Almost three months later, Jenkins was apprehended while attempting to cross the border as a passenger in a vehicle containing marijuana. She stated that she had been paid to drive the car, which she believed contained illegal aliens, across the border. Jenkins was charged with importation of marijuana. At trial, she testified in her own defense and maintained that she believed the vehicle in which she had been a passenger contained illegal aliens because she had been paid on two previous occasions to smuggle aliens. While the jury was deliberating, the government filed alien smuggling charges against Jenkins in connection with her first two border apprehensions.

The district court found that the prosecutor's conduct created the appearance of vindictive prosecution because the alien smuggling charges were brought only after Jenkins exercised her right to testify in her own defense at her separate marijuana smuggling trial. We affirm. We conclude that, because the government could have prosecuted Jenkins for alien smuggling well before she presented her theory of defense at the marijuana smuggling trial, the timing of the charges created the appearance of vindictiveness. The government's assertion that its case against Jenkins was much stronger after her in-court admission does not suffice to dispel the appearance of vindictiveness. We therefore conclude that the indictment should be dismissed.

## I.   Factual and Procedural Background

On October 19, 2004, Sharon Ann Jenkins, a United States citizen, attempted to enter the United States at the San Ysidro

port of entry, driving a white Mazda. The officer inspecting her vehicle discovered two non-citizens concealed in the trunk. When questioned, Jenkins stated that she had been offered $400 by a man named Pablo in exchange for bringing the undocumented individuals into the country.

The next day, Jenkins attempted to enter the United States driving a Dodge Caravan. The inspecting officer discovered two non-citizens concealed in the back of the vehicle. Jenkins was issued *Miranda* warnings, waived her rights, and stated that she was driving the vehicle across the border in exchange for $100 from a man named Pablo. Jenkins said that she did not know that the car contained illegal aliens, but that she was aware that it is illegal to transport undocumented individuals into the United States. The government did not press charges at that time against Jenkins for the October 19 and October 20 incidents.

On January 9, 2005, Jenkins attempted to enter the United States as a passenger in a 1989 Dodge Ram van driven by her husband. A search of the van uncovered marijuana concealed in the interior panels, speaker compartment, and radio compartment of the van. Jenkins was given *Miranda* warnings and waived her rights. She stated that she had been paid $500 by a woman named Maria to bring an undocumented alien across the border, and that she believed the vehicle contained an undocumented alien. Jenkins also said that she had been paid by a man named Pablo to smuggle aliens on two previous occasions, and that she had been apprehended. The agent interviewing Jenkins on January 9 possessed records detailing her previous alien smuggling arrests.

Jenkins was charged with importing marijuana in violation of 21 U.S.C. §§ 952, 960. At trial on April 6, 2005, Jenkins testified that she did not know that the van contained marijuana because she believed she was smuggling undocumented aliens. She stated that she had met Maria, the woman who paid her to drive across the border on January 9, through

Pablo, the man who previously had hired her to smuggle aliens. Special Agent Chase testified that when he questioned Jenkins on January 9, she told him that she had attempted unsuccessfully to smuggle aliens on two previous occasions.

The jury began deliberation on April 6 but did not reach a verdict by the end of the day.[1] At 4:46 p.m., the government filed a complaint charging Jenkins with smuggling one of the undocumented aliens involved in the October 20, 2004, incident. Jenkins subsequently was indicted for smuggling all four of the individuals involved in the October 19 and 20 incidents. She pled not guilty to the alien smuggling charges.

Jenkins moved to dismiss the alien smuggling indictment on the ground of vindictive prosecution, arguing that the charges were brought only after she elected to testify in her defense at the marijuana importation trial. The Assistant United States Attorney who filed the alien smuggling charges against Jenkins testified at the motion hearing. He conceded that the United States could have charged Jenkins with alien smuggling both at the time of her October apprehensions and at the time that the marijuana charges were filed, but he asserted that Jenkins's in-court testimony greatly strengthened the government's case.

The district court granted Jenkins's motion to dismiss the indictment. The court noted that the government had been aware of Jenkins's alien smuggling activities well before it decided to file charges, and that Jenkins's in-court testimony was not vital to the government's case. The court explained that its ruling was a "prophylactic" measure intended to prevent the chilling of a defendant's ability to take the witness stand. The government filed an unsuccessful motion for

---

[1]The next day, the jury informed the court that it could not reach a unanimous verdict. Jenkins was retried and convicted, and her conviction was affirmed on appeal. *United States v. Jenkins*, 2006 WL 3803372 (9th Cir. 2006). She is serving a 63-month sentence.

reconsideration of the district court's decision. This appeal followed.

## II.   Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. The standard of review of a district court's decision whether to dismiss an indictment for vindictive prosecution is unsettled in this circuit. *United States v. Hernandez-Herrera*, 273 F.3d 1213, 1217 (9th Cir. 2001). We have reviewed vindictive prosecution cases de novo, for abuse of discretion, and for clear error. *Id.*

We conclude that the district court's decision should be reviewed de novo because the issue presents a mixed question of law and fact. The trial court first determines whether the prosecutor's course of conduct appears motivated by a desire to punish the defendant for exercising a legal right. The court then decides whether the prosecutor has come forth with sufficient evidence to dispel any appearance of vindictiveness. Because our review of these determinations "requires us to consider legal concepts in the mix of fact and law," de novo review is appropriate. *United States v. Martinez*, 785 F.2d 663, 666 (9th Cir. 1986) (reviewing vindictive prosecution claim de novo) (quotations and citation omitted); *see also United States v. Bridges*, 344 F.3d 1010, 1014 (9th Cir. 2003) (motion to dismiss an indictment for improper or outrageous government conduct is reviewed de novo); *United States v. Fuchs*, 218 F.3d 957, 964 (9th Cir. 2000) (decision whether to dismiss an indictment for prosecutorial misconduct is reviewed de novo).

## III.   Discussion

**[1]** The government violated Jenkins's right to due process of law if it filed the alien smuggling charges to penalize her for exercising a protected statutory or constitutional right. *See United States v. Goodwin*, 457 U.S. 368, 372 (1982). Jenkins

may establish prosecutorial vindictiveness by producing direct evidence of the prosecutor's punitive motivation towards her. *See United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168 (9th Cir. 1982). Alternatively, she is entitled to a presumption of vindictiveness if she can show that the alien smuggling charges "were filed because [she] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *Id.* This case involves the latter situation, as the record contains no direct evidence of the government's improper motivation. *Cf. United States v. Hollywood Motor Car Co., Inc.*, 646 F.2d 384, 388 (9th Cir. 1981) (finding actual vindictiveness when government threatened to bring additional charges against defendants if they exercised their right to request change of venue), *rev'd on other grounds*, 458 U.S. 263 (1982) (per curiam).

## A.    Whether the filing of alien smuggling charges created the appearance of vindictiveness

**[2]** To establish a presumption of vindictiveness, Jenkins need not show "that the prosecutor acted in bad faith" or that he "maliciously sought" the alien smuggling indictment. *United States v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978); *see also United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976) ("We do not intend . . . to impugn the actual motives of the United States Attorney's office in any way."). Rather, she must demonstrate a *reasonable likelihood* that the government would not have brought the alien smuggling charges had she not elected to testify at her marijuana smuggling trial and present her theory of the case. *Gallegos-Curiel*, 681 F.2d at 1169 ("[T]he appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights.") (citing *Goodwin*, 457 U.S. at 373, 384). The mere appearance of prosecutorial vindictiveness suffices to place the burden on the government because the doctrine of vindic-

tive prosecution "seeks[s] to reduce or eliminate apprehension on the part of an accused" that she may be punished for exercising her rights. *Ruesga-Martinez*, 534 F.2d at 1369. As the district court noted, the "prophylactic" doctrine is designed, in part, "to prevent chilling the exercise of [legal] rights by other defendants who must make their choices under similar circumstances in the future." *United States v. DeMarco*, 550 F.2d 1224, 1227 (9th Cir. 1977).

**[3]** The case before us presents an unusual situation because the government's alien smuggling case essentially was open and shut even before Jenkins testified in court. The government's evidence prior to Jenkins's in-court confession included: (1) her October 19 admission that she had been paid by a man named Pablo to smuggle aliens, (2) her October 20 admission that Pablo had paid her $100 to drive a car across the border and that she was aware of the illegality of alien smuggling, and (3) her January 9 admission that she had smuggled aliens on October 19 and 20 and had been apprehended.[2] Indeed, the government admitted that prior to Jenkins's testimony it "had enough to go forward, unquestionably," and that it "could have brought charges earlier on." In these circumstances, the government's decision to press charges only after Jenkins asserted a reasonably credible defense to the marijuana importation charges raises, at the very least, a "reasonable or realistic likelihood" that the government's decision was motivated by a retaliatory purpose. We therefore conclude that the government's conduct created the appearance of vindictiveness.

**[4]** We are sensitive to the government's concern that the dismissal of charges resulting from a defendant's in-court admission may hamstring prosecutorial efforts. This might be

---

[2]Jenkins made the second and third statements after being given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). The police report describing the first statement does not indicate whether Jenkins was Mirandized.

a different case if the government had not been equipped with Jenkins's previous admissions at the time of her in-court testimony. But the government had more than enough evidence to proceed with the alien smuggling charges prior to Jenkins's decision to testify. *See Groves*, 571 F.2d at 453-54 (finding appearance of vindictiveness when government knew all of the facts relating to the second charge against the defendant at the time the first charge was brought, but only brought the second charge once the defendant moved to dismiss the first charge under the Speedy Trial Act). We therefore find it appropriate to place the burden on the government to justify its course of conduct.

Finally, we reject the government's argument that, because the alien smuggling and marijuana importation charges do not arise out of the same nucleus of operative fact, the doctrine of vindictive prosecution is inapplicable. The government relies on *United States v. Martinez*, 785 F.2d 663 (9th Cir. 1986). *Martinez* cited *United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir. 1981), for the proposition that, if a second charge is unrelated to the first, a presumption of vindictiveness does not arise. *Martinez*, 785 F.2d at 669. *Robison*, however, made clear that relatedness of the charges "is neither dispositive nor essential to prove vindictiveness." *Robison*, 644 F.2d at 1272 (citations omitted); *accord Groves*, 571 F.2d at 454 (stating that the fact that a second charge is unrelated is not "controlling in any case" or "dispositive on the question of vindictiveness"). Although *Martinez* certainly supports the proposition that the mere filing of a second, unrelated charge after a first charge does not give rise to a presumption of vindictiveness, we do not read *Martinez* as holding that a presumption of vindictiveness can *never* arise when the second charge is unrelated to the first. And *Martinez* depended in large part on the fact that "Martinez could have exercised no right in the [first] Colorado trial that would have affected the [subsequent] Arizona indictment." *Martinez*, 785 F.2d at 670; *see also Robison*, 644 F.2d at 1272 (finding that "Robison has failed to demonstrate any connection between the exercise of proce-

dural rights in prior prosecutions and the federal prosecution challenged here."). Here, in contrast, Jenkins' exercise of her right to testify that she thought she was once again smuggling aliens can easily be viewed as triggering the filing of the alien smuggling charges. The government itself recognizes that it brought the alien smuggling charges only because Jenkins admitted to them during the marijuana importation trial. Therefore, to the extent that we consider the relatedness of charges important to our analysis, this factor does not foreclose application of the doctrine of vindictive prosecution.

## B.    Whether the government rebutted the presumption of vindictiveness

**[5]** The presumption of vindictiveness raised by the prosecutor's decision to file alien smuggling charges against Jenkins must be overcome by "objective evidence justifying the prosecutor's action." *Goodwin*, 457 U.S. at 376 n.8. The prosecution must show that the additional charges "did not stem from a vindictive motive, or [were] justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." *Gallegos-Curiel*, 681 F.2d at 1168.[3]

**[6]** The government argues that, even if the content of the evidence against Jenkins was available all along, the evidence was stronger once Jenkins testified in court. The Assistant United States Attorney stated that Jenkins gave the government "no choice but to bring charges" and that "to walk away from [the opportunity] would be inexcusable." Although a confession in open court certainly added to the repertoire of evidence against Jenkins, we find the government's explanation unpersuasive. As the district court noted, it was not necessary to wait to file charges until Jenkins took the witness

---

[3]"For example, if the victim of an assault has died since the return of the first indictment, a subsequent indictment may properly charge the accused with murder rather than assault." *Ruesga-Martinez*, 534 F.2d at 1370 n.4 (citing *Blackledge v. Perry*, 417 U.S. 21, 29 n.7 (1974).

stand and confessed under oath: "cases for illegal alien smuggling in this district are proven on much less than that." Although we are reviewing the issue of vindictive prosecution de novo, we recognize that the district judge is well-positioned to relate how cases are usually conducted in his district.

**[7]** We also are unconvinced by the government's argument that it brought the alien smuggling charges precisely because bringing them after trial would have seemed vindictive. From the moment she was apprehended for smuggling marijuana, Jenkins maintained that she believed she was smuggling aliens and pointed to her October apprehensions. There was no reason for the government to think that she would not continue with this defense at trial. If the government had been concerned with appearing vindictive, it could have filed the alien smuggling charges in January, when Jenkins first asserted that she did not know she was smuggling marijuana. We therefore conclude that the justifications offered by the government do not suffice to dispel the appearance of vindictiveness created by the timing of the alien smuggling charges.

## IV. Conclusion

For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

---

CONLON, District Judge, dissenting in part:

I concur in the majority's statement of jurisdiction, as well as the conclusion that *de novo* is the appropriate standard of review. Whether the circumstances of this case created an appearance of vindictiveness requires a mixed consideration of legal principles and the facts of record. *United States v. Martinez,* 785 F.2d 663, 666 (9th Cir. U.S. 1986). I respectfully dissent from the majority's conclusion that the alien

smuggling indictment was properly dismissed by the district court.

## I.   Background

Sharon Ann Jenkins was arrested on January 9, 2005, at the Otay Mesa port of entry in a Dodge van driven by her husband. Concealed in the van were 118.20 kilograms (more than 260 pounds) of marijuana. Jenkins told a border officer she believed she was smuggling illegal aliens, and denied knowing there was marijuana in the van. Three months later, she testified at trial on the drug charges that she believed she and her husband were smuggling an undocumented alien into the United States, not drugs. She testified that several months before the drug arrest, she twice smuggled illegal aliens into the United States in exchange for money. According to Jenkins, the person providing the Dodge van loaded with marijuana was introduced to her by the person who hired her to smuggle aliens on two recent occasions, October 19 and 20, 2004.

Indeed, Jenkins was stopped at the border twice with undocumented aliens hidden in her vehicle two months before the drug stop. On both prior occasions, she was questioned, she admitted she was paid to drive the car across the border, and she was released. A criminal complaint charging alien smuggling was not filed against her until later the same day she testified at her drug trial. The indictment that is the subject of this appeal followed several weeks later.

## II.   Dismissal of the Indictment

Jenkins moved to dismiss the indictment relating to alien smuggling on a vindictive prosecution theory: the government brought the alien smuggling charges in retaliation for exercising her right to testify at her drug smuggling trial. According to the district court, the United States had all the information it needed to prosecute her for alien smuggling when she was

stopped at the border on October 19 and 20, almost five months earlier. The United States responded that the alien smuggling charges were initiated only after Jenkins admitted under oath that on two occasions, she attempted to smuggle undocumented aliens into the United States for money. The supervising Assistant United States Attorney, who approved the alien smuggling charges, testified at the hearing. He explained to the district court that he approved prosecution based on the *content* of Jenkins' testimony, not her decision to testify. The decision to prosecute was made when she confessed in detail to those other crimes under oath. The credibility of the prosecutor's explanation was not questioned by the court.

The district court dismissed the indictment because the timing of the alien smuggling charges immediately following Jenkins' testimony gave rise to an appearance of vindictiveness. It was the district court's opinion the government had sufficient information to prosecute Jenkins without her courtroom confession. ("Cases for illegal alien smuggling in this district are proven on much less than that"), 163. The court characterized its decision as "prophylactic" to insure that a defendant's right to testify and defend herself is not "chilled."

At the initial hearing on this issue, the district court stated, "my ruling should not in any way, shape, or form be construed as casting doubt or indicating that I do not believe government's counsel, or that I believe that they did anything improper." At a later hearing on the government's motion to reconsider, the court reiterated that the government did not do "anything wrong." But the timing of the alien smuggling charges did not pass the "smell test" and gave the appearance of being "coercive." The sequence of events was the only reason given for finding an appearance of vindictiveness. The prosecutive importance of Jenkins' detailed in-court confession to alien smuggling was given no weight. The district court relied instead on its opinion that the government could have filed alien smuggling charges when Jenkins was first

detained in October 2004 and admitted the crime. The majority concludes that charges could have been brought when Jenkins was arrested in January 2005 for drug smuggling and claimed she believed she was smuggling undocumented aliens. In the view of both the majority and the district court, the prosecutor's explanation was insufficient to dispel an appearance of vindictiveness.

## III.   Analysis

### A.   An appearance of vindictiveness was not established

Prosecutions are prohibited under circumstances that suggest a realistic likelihood of vindictiveness by the prosecutor. *Blackledge v. Perry,* 417 U.S. 21, 27 (1974). There is no suggestion that the prosecutor was actually motivated by vindictiveness or engaged in any improper conduct to punish Jenkins for testifying at her drug trial. Jenkins successfully staked her claim on the timing of the alien smuggling charges immediately after she testified to create an appearance of retaliation for exercising a constitutional right.

It is true that Jenkins need not show that the prosecutor actually acted in bad faith or maliciously. *United States v. Ruesga-Martinez,* 534 F.2d 1367, 1369 (9th Cir. 1976). But the appearance of vindictiveness results only if there is a realistic or reasonable likelihood of retaliatory conduct. *United States v. Gallegos-Curiel,* 681 F.2d 1164, 1169 (9th Cir. 1982). Jenkins failed to establish that there was a realistic or reasonable likelihood that alien smuggling charges were brought to punish her for taking the witness stand. The district judge acknowledged that his ruling dismissing the indictment had "absolutely no relationship to reality." There was no reasonable basis to conclude the government likely would have filed alien smuggling charges absent Jenkins' unequivocal in-court confession to those crimes, just to punish her for taking the stand.

### B.    The government rebutted any appearance of vindictiveness

There was a clear relationship between Jenkins' in-court confession and the ensuing alien smuggling charges. The prosecutor was entitled to reevaluate his decision to prosecute Jenkins in light of new information: Jenkins' confession under oath. The district court did not question the credibility of the prosecutor's explanation for the timing of the charges. There is no evidence to suggest the prosecutor's explanation was pretextual. The district court recognized Jenkins' in-court confession was "that last piece of evidence" making a solid case a "slam dunk" one. Nonetheless, the district court applied a subjective "smell test" based on timing and its opinion that the government did not really *need* Jenkins' in-court confession to prosecute her. The district court equated the purported admissions Jenkins made to border officers with her detailed confession under oath.

The majority minimizes the value of Jenkins' in-court confession as merely adding to the repertoire of evidence against her. However, purported admissions to law enforcement officers may be denied or challenged on a number of grounds, including voluntariness and accuracy. As the majority notes, there is no indication Jenkins was given *Miranda* warnings before her first statement to law enforcement officers. In contrast, trial testimony under oath is virtually unchallengeable and easy to present without the necessity of bringing in law enforcement officers to testify about statements taken on three different occasions.

The prosecutor explained that the quality of the alien smuggling evidence against Jenkins became significantly stronger with her in-court confession. Jenkins' in-court confession provided an intervening circumstance justifying the alien smuggling charges. *Gallegos-Curiel,* 681 F.2d at 1168. Any appearance of vindictiveness was adequately rebutted.

## C.    Dismissal of the indictment preempted prosecutorial discretion

The dismissal of the indictment was predicated on a finding that the government did not need Jenkins' in-court confession to file alien smuggling charges; the charges could have been filed either when she was apprehended with the aliens, or two months later when she was stopped with the marijuana and claimed she thought she was just smuggling aliens again. This reasoning "second guesses" matters of prosecutorial discretion. The United States Attorney has broad discretion in determining prosecutorial policies and priorities. *United States v. Goodwin,* 457 U.S. 368, 380 n. 11 (1982); *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978). Charging decisions are "particularly ill-suited to judicial review." *Wayte v. United States,* 470 U.S. 598, 607 (1985). The Supreme Court has admonished that a prosecution's deterrence value, and prosecution priorities and plans "are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* The prosecutor is in the best position to evaluate the costs and benefits of a particular strategy, allocation of resources, evidentiary problems, general or specific deterrence values, and prosecution priorities. These considerations are all inherent in the executive branch functions of United States Attorneys. Substituting the conventional wisdom of judges as to when charges could or should be filed inappropriately preempts the prosecutor's role.

The Supreme Court has addressed similar issues in selective prosecution cases. In invoking judicial power over the United States Attorney to preempt an executive function, the government is presumed to have properly exercised its constitutional responsibilities to enforce the nation's laws. *United States v. Armstrong,* 517 U.S. 456, 463 (1996), *quoting Heckler v. Chaney,* 470 U.S. 821, 832 (1985). The presumption of regularity in a prosecutorial decision is strong and must be overcome with clear evidence. *Id.* Here, the prosecutor's explanation was not accorded a presumption of regularity.

Rather, the majority accepts the district court's opinion that Jenkins' in-court confession was not vital to the government's case, so alien smuggling charges could have been filed either when she was apprehended with illegal aliens, or two months later when she was apprehended and claimed she thought the contraband was human, not drugs.

The doctrine of vindictive prosecution does not diminish the principle of prosecutorial discretion. *United States v. Griffin,* 617 F.2d 1342, 1348 (9th Cir. 1980) ("[n]othing in *Blackledge* presumed to give a defendant a free ride for separate crimes he may have committed, or to prevent a prosecutor from bringing new charges as a result of changed or altered circumstances which properly bear on prosecutorial discretion"). A prosecutor necessarily considers the quality and strength of evidence in deciding when or whether to prosecute. Here, the prosecutor admittedly had sufficient evidence to bring alien smuggling charges against Jenkins before she testified, but he chose not to. His conclusion that Jenkins' in-court confession greatly strengthened the alien smuggling case and his decision to file a criminal complaint on these charges fell within the bounds of prosecutorial discretion.

I would reverse the dismissal of the indictment.