**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

v.

SHARON ANN JENKINS,
  *Defendant-Appellee.*

No. 06-50049

D.C. No.
CR-05-00698-RTB

ORDER

Filed March 4, 2008

Before: William C. Canby, Jr. and Sidney R. Thomas,
Circuit Judges, and Suzanne B. Conlon,* District Judge.

Order;
Dissent by Chief Judge Kozinski;
Dissent by Judge O'Scannlain

---

## ORDER

Judge Thomas voted to deny the petition for rehearing en banc and Judge Canby so recommended. Judge Conlon recommended granting the petition for rehearing en banc.

The petition for en banc rehearing has been circulated to the full court. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed R. App. P. 35.

---

*The Honorable Suzanne B. Conlon, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

The petition for rehearing en banc is DENIED.

---

KOZINSKI, Chief Judge, dissenting from the order denying the petition for rehearing en banc:

I join every word of Judge O'Scannlain's well-reasoned dissent, but I want to call particular attention to footnote 2. As Judge O'Scannlain points out, there is no such thing as a "smell test" when it comes to detecting prosecutorial misconduct, as such a test would eviscerate the broad power that the Constitution gives to the executive branch to make prosecutorial decisions. A test based on the olfactory apparatus of each district judge, rather than on well-defined and closely cabined legal standards, would give the district courts far too much say over who gets prosecuted and when. That would be wholly inconsistent with our role as impartial adjudicators, and with the prosecutor's independent authority to bring charges.

---

O'SCANNLAIN, Circuit Judge, dissenting from the denial of rehearing en banc, joined by KOZINSKI, Chief Judge, and KLEINFELD, TALLMAN, CALLAHAN, BEA, M. SMITH, Circuit Judges:

The opinion in this case holds that the Fifth Amendment bars prosecutors from charging a crime to which a defendant unequivocally admits in the course of a trial for an unrelated offense. Because it contradicts our precedent and creates a split with our sister circuits, I respectfully dissent from our order rejecting rehearing *en banc*.

I

On October 19, 2004, Sharon Ann Jenkins drove a car holding two undocumented aliens into the United States from

Mexico. *United States v. Jenkins*, 504 F.3d 694, 697-98 (9th Cir. 2007). Upon being questioned at the border, and before any *Miranda* warnings apparently were provided to her, Jenkins admitted that the passengers in the car were undocumented aliens, and that she had been hired to bring them into the United States. *Id*. at 697-98, 700 n.2. She was thereupon released. *Id*. at 702. The next day, Jenkins once again attempted to drive into the United States from Mexico with two undocumented aliens. *Id*. at 698. Again she was stopped at the border and, this time after *Miranda* warnings were issued, she admitted that she had been hired to smuggle the two aliens into the United States. *Id*. at 698, 700 n.2. Jenkins again was released that day. *Id*. at 702. She was not immediately prosecuted for either offense. *Id*. at 698.

Three months later, Jenkins attempted to cross the border, only this time in a van loaded with 118.20 kilograms of marijuana. *Id*. Upon being stopped at the border, Jenkins stated that she believed the van contained an undocumented alien and had no knowledge of the presence of marijuana. *Id*. Jenkins was charged with the illegal importation of marijuana. *Id*. At trial, Jenkins testified in her own defense that she believed the van contained undocumented aliens, specifically citing her two prior attempts to smuggle aliens. *Id*. Before the jury completed its deliberations, federal prosecutors charged Jenkins with one count of alien smuggling, to which three other counts were subsequently added; she was later indicted on the charges. *Id*.

Jenkins sought to dismiss the alien smuggling indictment on the ground that the government was retaliating against her for taking the stand in her own defense. *Id*. The government argued that the charges were filed because of the content of Jenkins' testimony rather than the fact that she took the stand, as her admission under oath to alien smuggling provided the government with the smoking gun it needed to prosecute her for the offenses. *Id*. The government acknowledged that it "had enough [evidence] to go forward" on the alien smug-

gling charges before Jenkins admitted to those crimes on the stand. *Id.* at 698, 700. Her statements at the border were arguably tainted by the *Miranda* violation at the first stop;[1] with Jenkins' admission now on the record, the government contends that it now has a winnable case. *Id.* at 698.

The district court credited the government's stated reasons for bringing the new charges, indicating that the "ruling should not in any way, shape or form be construed as casting doubt or indicating that I do not believe the government's counsel." *Id.* at 703. However, because the district court concluded that the timing of the charges failed the "smell test,"[2] the district court dismissed them as a "prophylactic" protection of Jenkins' right to testify on her own behalf that had "absolutely no relationship to reality." *Id.* at 703-04.

Holding that "the government had more than enough evidence to proceed with the alien smuggling charges prior to Jenkins's decision to testify," the opinion likewise presumed that the government's filing of the new charges was vindictive and affirmed their dismissal. *Id.* at 699-702.

Like Judge Conlon, who dissented on the grounds that there was an insufficient showing of prosecutorial vindictiveness and that acting on the defendant's testimony was within prosecutorial discretion, *id.* at 703-05, I believe the opinion errs.

## II

It is a well-established principle that courts should tread

---

[1] Moreover, Judge Conlon's dissent aptly notes, with respect to the statements Jenkins made during the second stop, that "purported admissions to law enforcement officers may be denied or challenged on a number of grounds, including voluntariness and accuracy." *Jenkins*, 504 F.3d at 704.

[2] While we have great respect for the intuition of our district judges in many settings, here the so-called "smell test" has no roots in this or any court's precedent of which we are aware.

upon prosecutorial charging decisions with hesitation. "[U]nder our system of separation of powers, the decision whether to prosecute, and the decision as to the charge to be filed, rests in the discretion of the Attorney General or his delegates, the United States Attorneys." *United States v. Edmonson*, 792 F.2d 1492, 1497 (9th Cir. 1986). Accordingly, the Supreme Court has recognized that "the decision to prosecute is particularly ill-suited to judicial review" because courts are incapable of competently assessing "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States*, 470 U.S. 598, 607 (1985); *see also United States v. Armstrong*, 517 U.S. 456, 465 (1996) (noting that "[j]udicial deference to the decisions of [prosecutors] rests in part on an assessment of the relative competence of prosecutors and courts"). That is, because their perspectives are limited to those cases over which they preside, judges cannot feasibly determine how best to allocate prosecutorial resources, let alone weigh the strength of the prosecution's evidence against such consideration.

Yet that is precisely what the panel in *Jenkins* has done. Absent any evidence of actual prosecutorial vindictiveness, the opinion upholds the dismissal of the alien smuggling charges based upon its assertion that the government already had "more than enough evidence" to proceed with those charges prior to Jenkins' testimony, notwithstanding the government's adamant position that it did not have enough evidence to make the case *worth pursuing*. *Jenkins*, 504 F.3d at 700. By concluding that prosecutors should have sacrificed the resources necessary to pursue the charges before Jenkins admitted to the crimes under oath, the opinion oversteps our judicial function and flies in the face of the Supreme Court's caution against encroaching upon prosecutorial charging decisions by independently weighing the strength of the government's evidence.

III

A

The flaw in the opinion is that it broadens the doctrine of presumed prosecutorial vindictiveness well beyond its traditional bounds. Under that doctrine, of course, a court may dismiss charges filed against a defendant in retaliation for his exercise of a legal right. In the absence of sufficient evidence of actual retaliatory intent, a court may presume prosecutorial vindictiveness "where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he exercised a specific legal right." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1168-69 (9th Cir. 1982).

Given the Supreme Court's admonition against judicial oversight of prosecutorial charging decisions, it is not surprising that the doctrine of presumed vindictiveness has been substantially curtailed by this and other courts. Under one such limitation, we have recognized that, "if the additional charge aris[es] out of the same nucleus of operative facts as the original charge, a presumption of vindictiveness is raised. If, however, the second charge is unrelated to the first, the presumption does not arise." *United States v. Martinez*, 785 F.2d 663, 669 (9th Cir. 1986) (internal quotation marks and citations omitted); *accord United States v. Groves*, 571 F.2d 450, 454 (9th Cir. 1978) (upholding a presumption of vindictiveness where new and old charges stemmed from the same investigation and thus "grew out of the same set of facts").[3]

---

[3]Indeed, noting the "severity" of the doctrine of presumed vindictiveness, a plurality of the Supreme Court has implicitly affirmed the principle that the doctrine does not apply where the prior and new charges stem from distinct factual nuclei. *See Wasman v. United States*, 468 U.S. 559, 566 (1984) ("[T]he Court has been chary about extending the [ ] presumption of vindictiveness when the likelihood of vindictiveness is not as pronounced as in . . . *Blackledge* [*v. Perry*, 417 U.S. 21 (1974)].").

## B

Two of our sister circuits have affirmed that principle. In *Williams v. Bartow*, 481 F.3d 492 (7th Cir. 2007), the defendant twice committed child molestation, once in 1990 and once in 1996. Prosecutors declined to pursue charges for the 1990 incident because they determined that there was insufficient evidence; however, they brought charges for the 1996 incident. *Id.* at 495. At the ensuing trial, the victim of the 1990 molestation testified to the facts of that incident. *Id.* at 496. After Williams successfully moved for a new trial based on ineffective assistance of counsel, prosecutors added a charge for the 1990 incident in reliance of the victim's testimony. *Id.*

The Seventh Circuit first noted that neither the Supreme Court's precedent nor its own had expressly addressed whether presumed vindictiveness may apply "to situations where the defendant is charged, post-appeal, on the basis of *different* criminal conduct, as opposed to a heightened charge on the basis of the same criminal conduct." *Id.* at 502 (emphasis in original). The court held that "when the prosecutorial conduct involves *other* criminal conduct, the defendant must demonstrate actual vindictiveness rather than relying on the

---

In *Blackledge*, Perry was tried and convicted for a misdemeanor stemming from a prison altercation in which he was involved. 417 U.S. at 22. When Perry obtained a new trial, the prosecutor indicted him for other offenses stemming from the same fight. *Id.* at 22-23. After specifically noting that "the indictment covered the same conduct for which Perry had been tried and convicted," *id.* at 23, the Supreme Court held that the charges were presumptively retaliatory against Perry's having pursued his right to a new trial. *Id.* at 28-29.

While *Blackledge* expressly was predicated on the charges having stemmed from the same fight (and, hence, the same factual nucleus), the prosecutors here proffer a valid explanation for the alien smuggling charges; indeed, the district court *credited* their explanation. *See Jenkins*, 504 F.3d at 703 (noting that the government did not do "anything wrong").

presumption [of vindictiveness]." *Id*. at 502 (emphasis in original). Thus, the *Williams* court held that factual relatedness is dispositive in assessing a claim of presumed vindictiveness, a holding with which our opinion starkly conflicts. *Id*.

Moreover, one of the key factual considerations in *Williams* was that the prosecutor finally had the molestation victim's open court testimony, whereas "[p]reviously, he had only the police report statements of the two very young children." *Id*. at 503. The facts of *Williams* and *Jenkins* are consistent. Both cases involve prosecutors who subsequently acquired enough evidence to proceed with a charge (or, in *Jenkins*, four charges) that previously had been insufficient to merit the sacrifice of prosecutorial resources. Just as the prosecutors in *Williams* obtained the testimony of the more mature victims, the prosecutors in *Jenkins* were handed an unchallengeable confession, which was what they lacked to make the charges worth pursuing.

For the same reason, *Jenkins* conflicts with the holding in *Humphrey v. United States*, 888 F.2d 1546 (11th Cir. 1989). In *Humphrey*, while the defendant appealed a conviction of six counts of auto theft, prosecutors indicted him for an additional eleven counts of that offense stemming from "independent acts." *Id*. at 1547-49. He contested the second indictment in part on a claim of prosecutorial vindictiveness. *Id*. The Eleventh Circuit distinguished the Supreme Court's holding in *Blackledge* on the ground that it "addresse[d] the situation of state retaliation by *substituting* a more serious charge for the original charge." *Id*. at 1549 (emphasis in original). Rather, the court determined that in *Humphrey*, "[t]he charges in the second indictment are not a substitution; indeed, they are different charges based upon independent acts." *Id*. Thus, the court held that regardless of the "timing of the second indictment," the doctrine of presumed vindictiveness was inapplicable. *Id*.

IV

The *Jenkins* opinion is mistaken on another crucial point: it was not Jenkins' exercise of the right to testify that triggered the subsequent charges; it was the *content* of that testimony. We expressly held in *United States v. Baker*, 850 F.2d 1365, 1370 (9th Cir. 1988), that the content of a defendant's testimony on his own behalf can be used as the basis for a new prosecution against him, because "a defendant can[not] expect to admit with impunity a crime for which he or she is liable." We therefore affirmed the principle that "encouraging a defendant to immunize oneself from other criminal conduct by testifying at a trial was never the intent of the fifth amendment." *Id.* By conferring upon Jenkins the right to testify about her past crimes with immunity from subsequent prosecution, the *Jenkins* opinion flatly contradicts our holding in *Baker* and creates the preposterous rule that a defendant can shield himself from future prosecution for unrelated crimes by openly admitting to them on the stand.

Indeed, while Jenkins would not have admitted to alien smuggling had she not testified, the same can be said for her having elected to plead not guilty or to have raised a defense in the first place. Accordingly, there is no limiting principle to the newly promulgated rule in *Jenkins*: so long as the prosecutors have "enough evidence" to bring charges before a trial is initiated for an unrelated crime, subsequent prosecution is barred if new evidence is acquired in the exercise of a constitutional right.[4] Such a broad "but for" test has no place in assessing whether to supplant prosecutorial charging discretion—our task is to assess only whether there is a "realistic likelihood" that the alien smuggling charges "would not have occurred but for hostility or a punitive animus" stem-

---

[4] *Cf. United States v. Bryser*, 95 F.3d 182, 187 (2d Cir. 1996) (rejecting the "absurd result that incriminating statements may not be used as evidence because they were made otherwise in aid, or under the umbrella, of a constitutional right").

ming from the exercise of a right. Under the rule properly created by *Baker*, prosecutors could feel overwhelming animus toward a defendant who admits to crimes on the stand, but filing unrelated charges in response does not give rise to a presumption of vindictiveness, as such is a legitimate prosecutorial consideration. *Cf. Blackledge*, 417 U.S. at 27 ("[T]he Due Process Clause is not offended by all possibilities of increased punishment . . . but only by those that pose a realistic likelihood of vindictiveness.").[5]

V

The *Jenkins* opinion also creates a split with three of our sister circuits on a corollary rule. Just as presumed vindictiveness is improper where new and old charges stem from distinct factual nuclei, such presumption is available only where the severity of an indictment—i.e., the crimes charged for the same underlying conduct—is increased following a defendant's successful appeal. *See United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980) ("In most cases, [vindictive prosecution] involves a showing that the prosecutor has re-indicted the defendant and increased the severity of the charge, after the defendant has exercised a statutory or constitutional right").

That rule has been adopted by three of our sister circuits. *See United States v. Peoples*, 360 F.3d 892 (8th Cir. 2004); *United States v. Perry*, 335 F.3d 316 (4th Cir. 2003); *United*

---

[5]Similarly, the Court has held, "The possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." *United States v. Goodwin*, 457 U.S. 368, 384 (1982) (emphasis in original). It is just as unlikely that prosecutors sought to punish Jenkins for testifying in her own defense. Absent some other evidence, the only reasonable conclusion is that prosecutors responded not to the *fact* of her testifying but to the *content* of her testimony, which lies outside the scope of Fifth Amendment protection.

*States v. Miller*, 948 F.2d 631 (10th Cir. 1991) (holding that *Blackledge* is generally limited to its facts); *but cf. Johnson v. Vose*, 927 F.2d 10 (1st Cir. 1991). The Eighth Circuit has gone even further than us in holding that a "presumption of vindictiveness arises only when the prosecutor chooses to bring a more serious charge against a defendant in a second trial." *Peoples*, 360 F.3d at 896.

In *Jenkins*, the new charges were not filed following a successful appeal, nor did the prosecutors seek to increase the severity of the marijuana importation indictment. The opinion fails to provide any rationale for deviating from this general rule.

## VI

In addition to the multiple splits created by the *Jenkins* opinion, rehearing of this case is necessary because of the dangerous precedent it has set. *Jenkins* will have the perverse result of compelling prosecutors to rely on ever-weaker evidence in bringing charges, lest they lose the opportunity ever to pursue those charges. That incentive is particularly strong when dealing with recidivist criminals, who are most likely to have committed unrelated offenses in the past, yet those are precisely the suspects for whom the government should have utmost discretion in investigating and prosecuting.

Such danger is precisely why we must not overstep the clear judicial boundary cautioning us against engaging in a judicial assessment of whether the government had "sufficient evidence" to pursue criminal charges on flimsier evidence. Thus, the rule propounded by our sister circuits in *Williams* and *Humphrey*, from which *Jenkins* has recklessly split, is a crucial prophylactic against tempting judges from supervising prosecutorial charging decisions.

## VII

The opinion's holding that Jenkins can shield herself from prosecution by admitting to unrelated crimes during trial is

unprecedented, creates multiple inter-circuit splits, and will disrupt the government's ability to manage its criminal caseload by impermissibly encroaching upon prosecutorial discretion.

For the foregoing reasons, I respectfully dissent from our unfortunate decision not to rehear this case *en banc*.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2008 Thomson/West.