[No. C057362. Third Dist. Aug. 5, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
KACEY VALLI, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.

## COUNSEL

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Larenda Delaini, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CANTIL-SAKAUYE, J.**—Defendant Kacey Valli's relief after the jury acquitted him, a "three striker," of murder, attempted murder and being a felon in possession of a firearm was short lived when, minutes after the acquittal, the prosecution arrested him for two felony counts of evading arrest. Evidence of the evading, but not the formal charges themselves, had previously been presented by the prosecution in the murder trial at which defendant was acquitted. To help prove the murder by showing defendant's consciousness of guilt, the prosecution introduced evidence that days after the shooting defendant once drove recklessly in fleeing from the police and later, as a passenger, successfully directed a driver to flee from the police. In the second trial, a jury convicted defendant of both counts of felony evading (Veh. Code, § 2800.2), based in part on his testimony in the murder trial in which he admitted the evading. The jury also found defendant had two prior serious felony convictions. (Pen. Code, §§ 667, subd. (d), 1170.12.) The court sentenced defendant to 50 years to life in prison.

On appeal, defendant contends the trial court erred in denying his pretrial motion to dismiss the evading charges. He contends the prosecution of those charges was barred by Penal Code section 654, as interpreted in *Kellett v. Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206] (*Kellett*). He further contends the trial court erred in denying his posttrial motion to dismiss on the ground of vindictive prosecution as he was charged with felony evading only after he testified in his defense. Alternatively, he

contends that if the claim of vindictive prosecution was not timely raised, he was denied effective assistance of counsel.

We affirm. The subsequent prosecution for felony evading was not barred by Penal Code section 654. Although the People used evidence of the evading in the murder trial to show consciousness of guilt, the same act or course of conduct did not play a significant part in both the murder and the evading. There was no vindictive prosecution. The new charges were brought not in retaliation for the exercise of constitutional rights, but in response to the acquittal on the murder charge. An earlier acquittal is a legitimate prosecutorial consideration in charging.

## FACTS

*The Murder*

On the night of November 19, 2005, an assailant with a rifle fired at Artemeo Ramirez. Ramirez escaped, but his father, who was in a nearby car, was killed. Ramirez told the police defendant was the shooter.

*The Evading*

The next evening, November 20, Detective Jason Ramos observed a maroon-colored van associated with defendant; there were two females visible inside. He followed the van and decided to stop it. His partner activated the "wigwag lights" and siren in the unmarked vehicle. The van pulled over; as the officers approached, they saw two men rise up from the rear of the van.

Lorena Apel was driving the van. Defendant's younger sister, Concepcion Chitica, was in the front passenger seat; defendant's uncle, Richard Bahmiller, was in the middle seat, with defendant in the rear. When they saw the police lights and heard the siren, they became upset and argued about what to do. Apel pulled the van over and stopped.

The police observed one male passenger lunge towards the driver's seat. The other passengers got out of the van, and the van accelerated. The passengers told the police defendant was driving the van. Detective Ramos then pursued the van.

The van travelled at a high rate of speed, fishtailing; it appeared on the verge of losing control. The van went northbound on Highway 99 and then slowed. The driver got out on the center median, ran across the highway and climbed over the sound wall and escaped. During the pursuit, the van violated

several traffic laws: it travelled at an unsafe speed, failed to yield, made unsafe lane changes, and failed to use a turn signal.

About one week later, on November 26, Detective Glenn Matsumoto observed that defendant was a passenger in a red compact car driven by a woman. A pursuit began, with a marked canine unit in the lead. The car stopped and defendant got out; he heard the police dog barking, got back into the car, and took off again.

Christina Aguila was driving the red car. She had been driving with defendant for several days prior to the incident. When she heard the sirens, the helicopter, and something over a loudspeaker, she yelled at defendant. He asked her not to pull over, pleading with her not to stop. Aguila drove onto the freeway, driving over 80 miles per hour. She exited the freeway and ran several stoplights. She then returned to the freeway. The car stopped on the median; defendant got out and ran across the freeway. He was apprehended.

*The Murder Trial*

Defendant was charged with murder, attempted murder and being a felon in possession of a firearm. Aguila was charged with felony evading and being an accessory. The People sought to consolidate the cases; both defendant and Aguila opposed the motion. Aguila pled to felony evading.

At the murder trial, evidence of the evading was introduced to show defendant's consciousness of guilt. Detective Ramos and Apel testified about the November 20 pursuit. Aguila testified about the November 26 incident. In addition, several officers testified about the November 26 pursuit. A videotape of the pursuit, taken from a helicopter, was played for the jury.

Defendant testified in his defense. He admitted he decided to leave town once the police were looking for him. When the van was pulled over, defendant took off because Bahmiller told him to and he was inclined to get away. When he was with Aguila, he was afraid the officers would shoot him. When the pursuit began with sirens, defendant begged Aguila not to pull over. When she eventually did, he ran. Defendant admitted that they ran red lights.

The prosecutor argued to the jury that defendant's flight showed a consciousness of guilt. He quoted the following Scripture. "Proverbs 28: The wicked man flees when no one pursues, but the righteous is as bold as a lion."

The jury acquitted defendant on all counts and lesser charges.

*The Evading Trial*

The same day as the acquittal, defendant was arrested on two counts of felony evading. The amended complaint charged two counts of felony evading and being a felon in possession of a firearm. It alleged two strike priors.

The defense moved to dismiss under double jeopardy, Penal Code section 654, and *Kellett, supra*, 63 Cal.2d 822. Meanwhile, the information added a charge of carjacking with personal use of a firearm. The trial court granted the motion to dismiss only as to the felon in possession of a firearm charge. The motion was denied as to the remaining charges; the court found they were separate and distinct, based on different evidence and different facts. The People's awareness of defendant's subsequent offenses at the time of the first trial brought into question the economy of separate prosecutions, but did not raise the bar of double jeopardy.

At the evading trial, Apel and Aguila again testified under grants of immunity. In addition, Bahmiller and Chitica testified under grants of immunity. The officers involved in the two pursuits also testified. The helicopter videotape of the November 26 chase was played for the jury. Portions of defendant's testimony from the murder trial, relating to the two pursuits, were read to the jury.

The jury found defendant guilty of two counts of felony evading, but found the allegation defendant was armed in the first count not true. The jury hung 11 to one on the carjacking charge and a mistrial was declared as to that charge.

After trial, the defense raised the recent case, *U.S. v. Jenkins* (9th Cir. 2007) 504 F.3d 694 (*Jenkins*), which found vindictive prosecution after the defendant was charged with crimes she admitted at trial on another charge. Defense counsel argued this case "was worse" than *Jenkins* and admitted maybe he had been "barking up the wrong tree" in relying on *Kellett* because the correct doctrine was vindictive prosecution.

The trial court denied the oral motion to dismiss for vindictive prosecution. It found the motion untimely because it should have been made prior to trial; the motion to dismiss had been made and rejected by another judge; and defendant failed to show vindictive prosecution.

## DISCUSSION

### I.

### PENAL CODE SECTION 654 DID NOT BAR PROSECUTION FOR EVADING

Defendant contends the trial court erred in denying his pretrial motion to dismiss the evading case. He asserts all of the facts of the evading offenses were known by the People at the time of the murder case; indeed, these facts were presented in the murder trial to prove the murder charge. Defendant contends the failure to join the evading counts with the murder count bars subsequent prosecution under Penal Code section 654,[1] as interpreted by *Kellett, supra*, 63 Cal.2d 822.

On appeal, we review factual determinations under the deferential substantial evidence test, viewing the evidence in the light most favorable to the People. (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1687 [40 Cal.Rptr.2d 125].) We review de novo the legal question of whether section 654 applies. (*Hill v. City of Long Beach, supra*, at p. 1687.)

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

■ Section 654 addresses both multiple punishment and multiple prosecution. The separate concerns have different purposes and different rules of prohibition. "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." (*Neal v. State of California* (1960) 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839] (*Neal*).) Thus, "[a] defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person." (*Ibid.*)

"Section 654's preclusion of multiple prosecution is separate and distinct from its preclusion of multiple punishment. The rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily

---

[1] Hereafter, undesignated statutory references are to the Penal Code.

related to the punishment to be imposed; double prosecution may be precluded even when double punishment is permissible." (*Neal, supra,* 11 Cal.2d at p. 21.)

The California Supreme Court considered the multiple-prosecution prong of section 654 in *Kellett, supra,* 63 Cal.2d 822. In *Kellett,* the police arrested the petitioner, who was standing on a public sidewalk with a pistol in his hand. He was charged with violating section 417, exhibiting a firearm in a threatening manner. After the preliminary hearing, he was charged with being a felon in possession of a firearm. He pled *guilty* to the section 417 violation and moved to dismiss the pending felony. His motion was denied and he sought a writ of prohibition. (*Kellett, supra,* at p. 824.) The Supreme Court issued the writ. (*Id.* at p. 829.)

■ The court noted that by expanding the scope of permissible joinder under section 954,[2] "the Legislature has demonstrated its purpose to require joinder of related offenses in a single prosecution." (*Kellett, supra,* 63 Cal.2d at p. 826, fn. omitted.) Such joinder not only prevented harassment, but also avoided "needless repetition of evidence and saves the state and the defendant time and money." (*Ibid.*)

■ Construing sections 654 and 954 in the context of the constitutional requirement of fundamental fairness, the court stated: "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively. When there is a course of conduct involving several physical acts, the actor's intent or objective and the number of victims involved, which are crucial in determining the permissible punishment, may be immaterial when successive prosecutions are attempted. When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses

---

[2] Section 954 provides: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count."

will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett, supra,* 63 Cal.2d at p. 827, fn. omitted.)

"The *Kellett* rule, while seeking to prevent harassment of defendants, was bottomed in large part on a concern for avoiding needless repetition of evidence, and for conserving the resources and time of both the state and the defendant." (*People v. Tirado* (1984) 151 Cal.App.3d 341, 354 [198 Cal.Rptr. 682], disapproved on another point in *People v. Mendez* (1999) 19 Cal.4th 1084, 1097 [81 Cal.Rptr.2d 301, 969 P.2d 146].) Thus the offenses must be transactionally related, and not just joinable, before the *Kellett* rule applies. (*People v. Tirado, supra,* at p. 354.)

The *Kellett* rule applies only where "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part . . . ." (*Kellett, supra,* 63 Cal.2d at p. 827.) Addressing only the second charge of evading, the Attorney General, as the district attorney did at trial, argues the People did not have sufficient evidence to proceed against defendant on the November 26 evading count until Aguila testified at the murder trial that defendant asked her not to stop the car when the police began their pursuit. The Attorney General argues there was no direct evidence of defendant's aiding and abetting the November 26 charge of evading until Aguila's testimony. We disagree.

The People were clearly aware of the November 20 evading charge at the time of the prosecution of the murder. Defendant had driven a van recklessly, jumped out, climbed over the sound wall of the freeway and successfully evaded the police. Also, the People were, or should have been, aware of the November 26 evading offense at the time of the prosecution of the murder. There was ample evidence from which a jury could infer defendant shared Aguila's intent in evading the police. The only reason for Aguila to evade the police was that defendant was in the car and was wanted for murder. Defendant had fled the state with Aguila for several days. At the conclusion of the incidents on both November 20 and November 26, defendant ran across the highway and climbed over a sound wall. According to prosecution witness Detective Matsumoto, on the November 26 evading, defendant got out of the car initially, but returned once he heard the police dog. Further, the People could have known Aguila's trial testimony by questioning her after a grant of immunity.[3]

Since the People knew of the evading offenses at the time of the murder trial, the question is whether "the same act or course of conduct

---

[3] As defendant persuasively argues, the People's claim of ignorance, at the time of the murder trial, of defendant's role in the second evading is refuted by the People's use of the second evading in the murder trial to show consciousness of guilt.

play[ed] a significant part . . ." in the murder and the evading. (*Kellett, supra,* 63 Cal.2d at p. 827.) We are mindful that under the multiple-prosecution portion of section 654, intent or objective—which is crucial in determining permissible punishment—may be irrelevant. (*Kellett, supra,* at p. 827.) Thus, it is no answer to say that defendant had different intents and objectives for the murder and the evading offenses and could have been punished for both.

Whether *Kellett* applies must be determined on a case-by-case basis. (*People v. Britt* (2004) 32 Cal.4th 944, 955 [12 Cal.Rptr.3d 66, 87 P.3d 812].) Appellate courts have adopted two different tests to determine a course of conduct for purposes of multiple prosecution.

One line of cases finds *Kellett* not applicable where the offenses are committed at separate times and locations. In *People v. Douglas* (1966) 246 Cal.App.2d 594 [54 Cal.Rptr. 777] (*Douglas*), the defendants were involved in a series of robberies. Subsequently, the police attempted to arrest them; a gunfight ensued and an officer was killed. The defendants were indicted for murder and only one was convicted. After the verdicts, the defendants were charged with 10 counts of robbery and other crimes. Following trial, and retrial with separate counsel, they were convicted of the majority of the charges. They appealed. (*Id.* at p. 596.) The court found *Kellett* did not apply because the offenses did not arise from the same act: "But in the present case defendants were prosecuted for unrelated offenses arising from separate physical acts performed at different times. A murder, a robbery, an assault, like every other action, normally has a beginning, a duration, and an end, and where, as here, none of these overlap, simultaneous prosecution is not required under any present theory of jurisprudence." (*Id.* at p. 599.)

The *Douglas* court rejected the idea that the People must charge all known crimes initially. "While a defendant may not be subjected to a series of trials in an effort to wear him down, harass him, or obtain an acceptably severe judgment, we see no reason to require prosecutors to proceed against a defendant simultaneously for all known offenses, whether related to one another or not, in order to guard against the possibility of harassment. The adoption of such a rule would tend to aggravate the very harassment it was designed to alleviate by impelling a prosecutor filing on one charge to throw the book at the defendant in order to prevent him from acquiring immunity against other potential charges and to protect the prosecutor from accusations of neglect of duty." (*Douglas, supra,* 246 Cal.App.2d at p. 599.)

In *People v. Ward* (1973) 30 Cal.App.3d 130 [105 Cal.Rptr. 67] (*Ward*), the defendant kidnapped a woman, raped her and placed her in the trunk of his car. He then returned to her residence and convinced her daughter to go with him to the mother. During the ride, he orally copulated the daughter. The

defendant was charged in San Bernardino County with sex perversion upon the daughter, to which he pled guilty. He was subsequently charged with kidnapping and rape upon the mother in Los Angeles County. He unsuccessfully moved to dismiss, claiming failure to join all offenses barred the subsequent prosecution. (*Id.* at p. 133.) The court found *Kellett* not applicable. "The crimes were committed at different locations, at different times, against different victims, and with different objectives." (*Id.* at p. 136.) The court also noted there were jurisdictional problems as different counties were involved. (*Id.* at pp. 136–137.)

In *People v. Cuevas* (1996) 51 Cal.App.4th 620 [59 Cal.Rptr.2d 146] (*Cuevas*), a conviction for possession of cocaine for sale did not bar subsequent prosecution for two prior cocaine sales occurring on different dates. The court reduced the *Douglas* test to a simple formulation. "*Kellett* does not require, nor do the cases construing it, that offenses committed *at different times and at different places* must be prosecuted in a single proceeding." (*Id.* at p. 624, original italics.)

The Attorney General relies on this formulation and argues that since the murder and the evading occurred on different days in different places, *Kellett* does not apply. At trial, the prosecutor argued the "different time/different place" formulation was black letter law.

While we agree with the results in *Douglas, Ward* and *Cuevas*, we believe *Kellett* is not necessarily a simple "different time/different place" limitation. In *People v. Britt, supra*, 32 Cal.4th 944, a sex offender who moved from El Dorado County to Sacramento failed to register his move in either place. He pled no contest to failure to register in Sacramento and then was prosecuted in El Dorado and found guilty. The Supreme Court reversed, holding there was but a single course of conduct—one unreported move. (*Id.* at pp. 954–955.) Even though the offenses occurred on separate occasions and in different counties, successive prosecution was barred.

A second test was set forth in *People v. Flint* (1975) 51 Cal.App.3d 333 [124 Cal.Rptr. 269] (*Flint*), where a prosecution for grand theft auto and felony joyriding was barred after a prosecution for driving under the influence of alcohol. The court found various cases on *Kellett* could be harmonized by considering the totality of the facts and whether separate proofs were required for the different offenses. (*Flint, supra*, at pp. 337–338.) "Neither the purpose of the rule—prevention of needless harassment and waste of public funds; nor the criterion for its applicability—whether the same act or course of conduct plays 'a significant part' with respect to each crime—suggests that its applicability in a particular case depends on abstract definitions of the elements of the respective crimes or on the precise moment

when, as a matter of law, one crime was completed. What matters, rather, is the totality of the facts, examined in light of the legislative goals of sections 654 and 954, as explained in *Kellett*." (*Id.* at p. 336, fn. omitted.) The court found, "the same incident which furnished the evidence that defendant was driving in an intoxicated condition, also supplied proof that what he was driving was an automobile he had stolen." (*Id.* at p. 338.)

This evidentiary test was restated in *People v. Hurtado* (1977) 67 Cal.App.3d 633, 636 [136 Cal.Rptr. 774] (*Hurtado*): "More specifically, if the evidence needed to prove one offense necessarily supplies proof of the other, we concluded that the two offenses must be prosecuted together, in the interests of preventing needless harassment and waste of public funds." In *Hurtado*, the defendant's plea to driving under the influence of alcohol did not bar prosecution for narcotics charges, based on balloons of heroin found when he was stopped after speeding and swerving erratically. "Evidence in the two cases, was for the most part mutually exclusive, the only common ground being the fact that defendant was in the moving automobile in possession of the heroin at the same time that he was under the influence of alcohol. Such a trivial overlap of the evidence, however, under *Kellett* and *Flint* does not mandate the joinder of these cases." (*Id.* at p. 637.)

The evidentiary test of *Flint* and *Hurtado* requires more than a trivial overlap of the evidence. Simply using facts from the first prosecution in the subsequent prosecution does not trigger application of *Kellett*. In *Douglas*, testimony concerning the robberies was admitted in the murder trial to show motive, and a transcript of certain testimony in the murder case relating to the robberies was introduced as substantive evidence in the subsequent robbery trial. (*Douglas, supra,* 246 Cal.App.2d at p. 596.) The defendants argued the use of evidence against them in one trial precluded its use in another trial; using the same evidence for more than one prosecution was fundamentally unfair. The *Douglas* court rejected this argument. "This argument has no more than a surface plausibility, for evidence is merely proof of a fact, and a fact may be introduced into any proceeding to which it appropriately relates. To prove a fact the same evidence may be introduced in any number of proceedings, civil or criminal, in which the fact is relevant and material to any issue in the case." (*Id.* at p. 597.)

In this case, successive prosecution for felony evading after the trial on murder does not meet the evidentiary test set forth in *Flint* and *Hurtado*. Different evidentiary pictures are required—one of a shooting at night and the other of police pursuits in the following days. Different witnesses would testify to the events.

It is true the People relied on the evidence of the felony evading to prove the murder charge. Many of the witnesses to the evading, both civilian and

police, testified in the murder trial. While there were additional civilian witnesses in the evading trial, there was "a recycling of much of the same evidence which the People had to support the earlier prosecutions." (*Flint, supra,* 51 Cal.App.3d at p. 338.) In attempting to prove murder by establishing defendant's flight and consciousness of guilt, the People did more than simply use facts of defendant's evading the police; the People proved felony evading. Nonetheless, the People's decision to use the evading offenses to help prove murder did not meet the evidentiary test as stated in *Hurtado*: "if the evidence needed to prove one offense necessarily supplies proof of the other, . . . the two offenses must be prosecuted together, in the interests of preventing needless harassment and waste of public funds." (*Hurtado, supra,* 67 Cal.App.3d at p. 636.) Here, the evidence needed to prove murder—that defendant was the shooter—did not supply proof of evading. Evidence of the evading showed at most a consciousness of guilt as to the murder; as the acquittal shows, it was insufficient to supply proof of the murder. There was little evidentiary overlap between the murder and the evading offenses; the People simply used the evidence of evading to show consciousness of guilt, much as the People used evidence of the robberies to show motive for the murder in *Douglas*.

Part of the recycled evidence in the evading trial was defendant's testimony in the murder trial about the pursuits, which was read to the jury in the second trial. Defendant argues he was lulled into waiving his Fifth Amendment right against self-incrimination because the People failed to charge felony evading even though the facts of those offenses were fully known and Aguila had been charged and convicted for the November 26 incident.

It is a general rule of evidence that a defendant's testimony at a former trial may be used against him at a subsequent trial. (See *Harrison v. United States* (1968) 392 U.S. 219, 222 [20 L.Ed.2d 1047, 1051, 88 S.Ct. 2008].) Further, the content of defendant's testimony can be used as the basis for a new prosecution. (*U.S. v. Baker* (9th Cir. 1988) 850 F.2d 1365, 1370 [permitting government to obtain superseding indictment based on defendant's testimony at trial which ended in mistrial did not violate defendant's privilege against self-incrimination].) Thus, defendant had no reasonable basis to believe he was immunizing himself from prosecution for other criminal acts simply by testifying at his murder trial. We reject the notion that defendant chose to testify and admit the evading only because he believed the People had decided to forgo prosecution on those crimes. Rather, since the evidence of the evading was overwhelming, defendant's decision to admit the evading was a reasonable tactical decision designed to bolster his credibility before the jury so he could convince the jury the identification of him as the shooter was flawed. The People's ability to use defendant's

testimony against him at a later trial certainly burdened his decision to testify. Not every burden on a defendant's decision to testify, however, is impermissible. (*Ibid.*)

██ The decision as to appropriate charges is a matter of prosecutorial discretion. "[P]rosecutorial discretion is basic to the framework of the California criminal justice system. [Citations.] This discretion, though recognized by statute in California, is founded upon constitutional principles of separation of powers and due process of law." (*People v. Jerez* (1989) 208 Cal.App.3d 132, 137 [256 Cal.Rptr. 31].) We refuse to require prosecutors to proceed against a defendant on all known charges simultaneously. We share the concern of the *Douglas* court that such a requirement "would tend to aggravate the very harassment it was designed to alleviate by impelling a prosecutor filing on one charge to throw the book at the defendant in order to prevent him from acquiring immunity against other potential charges and to protect the prosecutor from accusations of neglect of duty." (*Douglas, supra,* 246 Cal.App.2d at p. 599.) Rather, we adhere to the rule of *Kellett*: "When . . . the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett, supra,* 63 Cal.2d at p. 827, fn. omitted.) Here, although the People relied in part on proof of the evading in order to prove the murder, the necessary interrelation of murder and evading is missing; the same act or course of conduct did not play a significant role in each.

Defendant argues *Kellett* must be applied in this case to prevent an abuse of power, relying on *Sanders v. Superior Court* (1999) 76 Cal.App.4th 609 [90 Cal.Rptr.2d 481]. In *Sanders*, after the defendant's conviction on 10 counts of grand theft was reversed, the People charged him with 10 counts of forgery and 10 counts of presenting false or forged documents for recording based on the same conduct. The appellate court granted a writ of mandate dismissing the subsequent information. (*Id.* at p. 617.) The court commented: "If *Kellett* principles are not applied to a case such as this, the resultant injustice would be manifest. The People, knowing several charges could be filed, could choose to file only one and see how that turns out. If the defendant is convicted, the other charges are rendered unnecessary. But if the defendant prevails, either at trial or on appeal on the ground of insufficiency of the evidence, the People could then file a new charge and keep doing that until a conviction is finally had. It is just such conduct which *Kellett* and its progeny seek to prevent." (*Id.* at pp. 616–617.)

■ We find *Sanders* distinguishable because in that case the same evidence established both grand theft and forgery or presenting false documents; the same conduct was at issue in both prosecutions. While we find *Sanders* distinguishable, we share some of its concerns about the People's decision to try the murder and evading separately. The separate trials implicate the concerns of harassment and waste of public funds noted by the *Kellett* court. (*Kellett, supra*, 63 Cal.2d at p. 827.) Here, the People were able to raise the felony evading evidence twice against defendant and, by prosecuting the evading charges after the murder prosecution failed, they were able to use defendant's testimony in the murder case against him. Despite these concerns, because the same act or course of conduct did not play a significant role in both the murder and the evading, neither section 654 nor *Kellett* bars the subsequent prosecution for two counts of evading.

## II.

### THERE WAS NO VINDICTIVE PROSECUTION

Defendant contends the trial court erred in denying his posttrial motion to dismiss based on vindictive prosecution. Defendant contends the timing of the People's decision to prosecute him for the evading raises a presumption of vindictive prosecution—that he was prosecuted as punishment for testifying in his defense at the murder trial.

The Attorney General responds that defendant has forfeited this contention by failing to move to dismiss on the basis of vindictive prosecution before trial. (*People v. Edwards* (1991) 54 Cal.3d 787, 827 [1 Cal.Rptr.2d 696, 819 P.2d 436].) Because defendant's posttrial motion was based on a new case, and because defendant contends if his motion was untimely he was denied effective assistance of counsel, we decline to resolve this issue on procedural grounds. Instead, we will address it on the merits.

■ The gravamen of a vindictive prosecution is the increase in charges or a new prosecution brought in retaliation for the exercise of constitutional rights. (*North Carolina v. Pearce* (1969) 395 U.S. 711, 723–726 [23 L.Ed.2d 656, 668–670, 89 S.Ct. 2072], overruled on other grounds in *Alabama v. Smith* (1989) 490 U.S. 794 [104 L.Ed.2d 865, 109 S.Ct. 2201].) It is "patently unconstitutional" to "chill the assertion of constitutional rights by penalizing those who choose to exercise them." (*United States v. Jackson* (1968) 390 U.S. 570, 581 [20 L.Ed.2d 138, 147, 88 S.Ct. 1209].)

"Where the defendant shows that the prosecution has increased the charges in apparent response to the defendant's exercise of a procedural right, the defendant has made an initial showing of an appearance of vindictiveness. [Citation.]" (*Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 371 [194 Cal.Rptr. 152, 667 P.2d 1165].) "[O]nce the presumption of vindictiveness is raised the prosecution bears a heavy burden of rebutting the presumption with an explanation that adequately eliminates actual vindictiveness. In this regard, the trial court should consider the prosecutor's explanation in light of the total circumstances of the case in deciding whether the presumption has been rebutted." (*Id.* at p. 374.)

"[T]he presumption of unconstitutional vindictiveness is a legal presumption which arises when the prosecutor increases the criminal charge against a defendant under circumstances which . . . are deemed to present a 'reasonable likelihood of vindictiveness.' " (*In re Bower* (1985) 38 Cal.3d 865, 879 [215 Cal.Rptr. 267, 700 P.2d 1269].) "In order to rebut the presumption of vindictiveness, the prosecution must demonstrate that (1) the increase in charge was justified by some objective change in circumstances or in the state of the evidence which legitimately influenced the charging process and (2) that the new information could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge." (*Ibid.*)

Defendant contends this case is analogous to *Jenkins, supra,* 504 F.3d 694, in which a presumption of vindictiveness arose after the government filed additional charges against the defendant only after she admitted them while testifying in her defense in another case. The Attorney General responds that *Jenkins* is distinguishable and this case is analogous to *U.S. v. Esposito* (3d Cir. 1992) 968 F.2d 300 (*Esposito*).

In *Jenkins,* the trial court dismissed an indictment for alien smuggling on the basis of vindictive prosecution because the charges were brought only after the defendant exercised her right to testify in a separate marijuana smuggling case. The Ninth Circuit affirmed. (*Jenkins, supra,* 504 F.3d at p. 697.) At trial in the marijuana case, the defendant testified she did not know the van contained marijuana because she believed she was smuggling undocumented aliens. She had met the woman who paid her to drive across the border through a man who had previously paid her to smuggle aliens. A special agent testified Jenkins had told him she had previously attempted to smuggle aliens. The same day as the defendant's testimony, while the jury was deliberating, the government filed a complaint charging the defendant with alien smuggling. (*Id.* at p. 698.)

The court found an appearance of vindictiveness because the government already knew about the alien smuggling, including the defendant's previous admissions before trial, but did not press charges until "Jenkins asserted a reasonably credible defense" to the marijuana charges. (*Jenkins, supra,* 504 F.3d at p. 700.) "The government itself recognizes that it brought the alien smuggling charges only because Jenkins admitted to them during the marijuana importation trial." (*Id.* at p. 701.) The government failed to rebut the presumption of vindictiveness because the government already had sufficient evidence to bring the alien smuggling charges before Jenkins testified; the new charges were not justified by independent reasons or intervening circumstances. (*Ibid.*)

In *Esposito*, the court found no vindictive prosecution where the new charges followed an acquittal. The government indicted a defendant on substantive drug offenses after the defendant had been acquitted in an earlier RICO (Racketer Influenced and Corrupt Organizations Act; 18 U.S.C. § 1961 et seq.) trial where the same drug transactions had been listed as predicate acts. (*Esposito, supra,* 968 F.2d at pp. 301–302.) The defendant claimed that this constituted a vindictive prosecution, asserting that the government punished him for exercising his right to trial and thereby deterred his right to plead not guilty. (*Id.* at p. 303.) The Third Circuit disagreed, concluding that there is no presumption of vindictiveness when the government chooses to indict a defendant on individual acts that arose out of the same nucleus of facts which resulted in an earlier acquittal. (*Id.* at pp. 303–307.) The government "did not react because Esposito invoked or exercised a constitutional right; he was simply acquitted by a jury." (*Id.* at p. 305.) The court found that the earlier acquittal is a legitimate prosecutorial consideration, because the government is not punishing the defendant for exercising a right but rather for the crimes he committed. (*Id.* at p. 304.)

The *Esposito* court declined to apply a presumption of vindictiveness where the government's conduct is attributable to legitimate reasons. (*Esposito, supra,* 968 F.2d at p. 305.) "We will not apply a presumption of vindictiveness to a subsequent criminal case where the basis for that case is justified by the evidence and does not put the defendant twice in jeopardy. Such a presumption is tantamount to making an acquittal a waiver of criminal liability for conduct that arose from the operative facts of the first prosecution. It fashions a new constitutional rule that requires prosecutors to bring all possible charges in an indictment or forever hold their peace. [Citation.] We reject such a proposition for it undermines lawful exercise of discretion as well as plain practicality." (*Id.* at p. 306.)

We find this case governed by *Esposito*, not *Jenkins*; defendant has failed to establish a presumption of vindictiveness. The timing of the People's decision to charge defendant with evading indicates it was a response to the acquittal, not to defendant's testifying at trial. In arguing for dismissal, defense counsel claimed the prosecutor announced the subsequent prosecution as the verdicts of acquittal were being read in the murder trial. On appeal, defendant argues his arrest immediately after acquittal "strongly suggests the People would not have brought the evasion charges had the jury not acquitted him." Defendant points to no evidence suggesting the People were punishing him for testifying in his defense. Numerous courts have held the filing of new charges after an acquittal on separate charges do not, without more, give rise to a presumption of vindictiveness. (*U.S. v. Johnson* (2d Cir. 1999) 171 F.3d 139, 141; *U.S. v. Wall* (10th Cir. 1994) 37 F.3d 1443, 1449; *U.S. v. Rodgers* (8th Cir. 1994) 18 F.3d 1425, 1430–1431; *Esposito, supra*, 968 F.2d at p. 306.)

Moreover, even if we found a presumption of vindictiveness because the decision to file evading charges came after defendant testified, the acquittals would serve as an "objective change in circumstances" "which legitimately influenced the charging process," and which "could not reasonably have been discovered at the time the prosecution exercised its discretion to bring the original charge." (*In re Bower, supra*, 38 Cal.3d at p. 879.) Thus, the presumption would be rebutted. (*Ibid.*)

### III.

### DEFENDANT IS NOT ENTITLED TO ADDITIONAL PRESENTENCE CREDIT*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Raye, J., concurred.

**SCOTLAND, P. J.,** Concurring.—Except for one remark, I join my colleagues' well-reasoned and well-written decision. I part company only with their comment in passing that, although the holding in *Sanders v. Superior Court* (1999) 76 Cal.App.4th 609 [90 Cal.Rptr.2d 481] is distinguishable and does not apply here, my colleagues "share some of its concerns about the

---

*See footnote, *ante*, page 786.

People's decision [in this case] to try the murder and evading separately." (Maj. opn., *ante*, at p. 802.) No such concern is justified.

It has been a common complaint for many decades that some prosecutors overcharge defendants. (See, e.g., *People v. Douglas* (1966) 246 Cal.App.2d 594, 599 [54 Cal.Rptr. 777].) One view is that overcharging constitutes harassment designed to make "plea proposals coercive" by "put[ting] undue pressures on defendants to plead guilty" to some offense or offenses rather than risk going to trial on numerous charges. (*Langer, Rethinking Plea Bargaining: The Practice and Reform of Prosecutorial Adjudication in American Criminal Procedure* (2006) 33 Am.J. Crim.L. 223, 286.) Another view is that such overcharging purportedly gives the prosecutor "a psychological advantage if a jury is presented with a long list of charges to consider," which "makes the defendant look 'guiltier' and provides subconscious pressure [on jurors] to find the defendant guilty of at least one or two charges." (Davis, Arbitrary Justice: The Power of the American Prosecutor (Oxford Univ. Press 2007) p. 31.)

As astutely observed by Justice Macklin Fleming long ago, to *require* a prosecutor to join together offenses committed at different times and different places "would tend to aggravate the very harassment [Penal Code section 654] was designed to alleviate" because it would "impel[] a prosecutor . . . to throw the book at the defendant in order to prevent him from acquiring immunity against other potential charges and to protect the prosecutor from accusations of neglect of duty." (*People v. Douglas, supra,* 246 Cal.App.2d at p. 599.)

The facts of this case do not support a conclusion that the prosecutor's charging decision was intended to harass defendant by holding back the evading charges in order to use them for later prosecution. In fact, the prosecutor should be commended for not overcharging defendant by adding the evading charges to the murder, attempted murder, and gun counts. This is particularly so because the facts of the evading that occurred a week after the shooting show that Christina Aguila, not defendant, was the person driving the car. A prosecutor should not be faulted for deciding that, based on facts known at the time of charging, there was reasonable doubt whether defendant was guilty of the second evading and, thus, it would have been unethical to include that charge along with the allegations of murder, attempted murder, and gun possession. I have no doubt that, when charging defendant with crimes related to the shooting, the prosecutor had no intent to later prosecute him for the evading offenses.

Because the acts of evading occurred at times and locations separate and different than the course of indivisible conduct that resulted in the shooting, the purpose of Penal Code section 654 to safeguard a defendant from harassment through successive prosecutions is not advanced by applying the statute to this case.

Accordingly, I concur in affirming the judgment.

Appellant's petition for review by the Supreme Court was denied November 17, 2010, S186108.