Filed 4/21/14  P. v. Juarez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ANTONIO JUAREZ,<br><br>　　　Defendant and Appellant. | B246890<br><br>(Los Angeles County<br>Super. Ct. No. KA095401) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Affirmed.

A. William Bartz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General; Dane R. Gillette, Chief Assistant Attorney General; Lance E. Winters, Senior Assistant Attorney General; Scott A. Taryle, Supervising Deputy Attorney General; and Pamela C. Hamanaka, Deputy Attorney General, for Plaintiff and Respondent.

_____

On April 8 2011, defendant Antonio Juarez was found in possession of a firearm. Five days later, he was charged with a single count of being a felon in possession of a firearm. (See Penal Code, § 29800, sub. (a).) During the course of the gun possession case, law enforcement discovered Juarez's firearm had been used during a freeway shooting that occurred two days prior to his arrest. After Juarez pled guilty on the possession charge, the prosecution filed a second information charging Juarez with two counts of attempted murder arising from the freeway shooting.

Juarez moved to dismiss arguing that the attempted murder charges violated Penal Code section 654's prohibition on multiple prosecutions for offenses committed within the same course of conduct. The trial court denied the motion, the case proceeded to trial, and Juarez was found guilty of both attempted murder counts. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Summary of the Charged Offenses

On April 6, 2011, at approximately 12:30 a.m., Anthony Martinez ("Martinez") and Daisy Avila ("Avila") were in Martinez's white BMW when a black car pulled up next to them. The driver of the black vehicle appeared to be angry and asked Martinez "Where the fuck are you from?" Martinez rolled Avila's window up and immediately turned left. The black car followed Martinez through a red light and onto the freeway. A person inside the black car fired a handgun at Martinez's vehicle. A bullet struck Martinez in the face, causing him to lose control of the car.

Two days later, on the evening of April 8, 2011, City of Baldwin Park police officer Jeffrey Honeycutt and his partner stopped Diane Leos for failing to use her turn signal. Although Leos was unable to produce a drivers license, she informed the officers she had identification at her apartment. The officers then transported Leos to her apartment, where they observed Juarez and another individual, Jimmy Osuna, sitting on separate couches in the living room. Juarez threw a blanket over several objects near him. Honeycutt saw the handle of a .9 millimeter handgun sticking out from the blanket and immediately detained Juarez. Honeycutt then directed Osuna to move away from the

2

couch and recovered a .38 caliber pistol that was beneath him. Honeycutt and his partner arrested Juarez and Osuna and placed them in the back of a patrol car. During a recorded conversation, Juarez told Osuna, "Fuck it, I hope they don't trace [the gun] to the fuckin' shooting."

The next day, April 9, 2011, Honeycutt informed California Highway Patrolman Brian Caporrimo, who was investigating the April 6th freeway shooting, that Juarez had been arrested with a .9 millimeter handgun and made recorded statements referencing a recent shooting. Based on that information, Caporrimo prepared a photographic lineup with Juarez's picture. On April 12, Caporrimo showed Martinez and Avila the photographic lineup. They both identified Juarez as the driver of the black car.

On April 13, 2011, the prosecution filed an information arising out of Juarez's April 8th arrest charging him with a single count of being a felon in possession of a firearm. Approximately three weeks later, a ballistics expert completed tests indicating that the bullets recovered from Martinez's car were discharged from the .9 millimeter handgun at issue in Juarez's gun possession case.

The preliminary hearing on Juarez's gun possession charge was held on May 11, 2011; Juarez pleaded guilty to the charge in July of 2011. Approximately two months later, on September 6, 2011, prosecutors filed an information charging Juarez with two counts of attempted murder (§ 664/187, subd. (a)) in connection with the April 6th freeway shooting.

### B. Proceedings in the Trial Court

Juarez filed a motion to dismiss the information arguing that the attempted murder charges were barred under Penal Code section 654's prohibition against multiple prosecutions for offenses committed within a single course of conduct. Juarez contended that, under the "multiple prosecution" test articulated in *Kellett v. Superior Court of Sacramento* (1966) 63 Cal.2d 822 (*Kellett*), the district attorney had a duty to join the attempted murder charges in the gun possession proceeding as soon as it became aware both offenses involved the same weapon. According to Juarez, the district attorney

3

discovered Juarez's firearm had been used in the freeway shooting in May of 2011, but chose not to file the attempted murder charges until after Juarez pleaded guilty to the gun possession charge.

The trial court denied the motion, concluding that section 654's prohibition on multiple prosecutions was inapplicable because the gun possession charge stemmed from an incident that occurred at a different time and in a different place than the attempted murders. The jury convicted Juarez of both counts of attempted murder.

## DISCUSSION

Juarez argues the trial court erred in denying his motion to dismiss the information pursuant to Penal Code section 654. On appeal, we review the trial court's factual determinations under the "deferential substantial evidence test, viewing the evidence in the light most favorable to the People." (*People v. Valli* (2010) 187 Cal.App.4th 786, 794 (*Valli*) [reviewing a motion to dismiss pursuant to section 654's bar on multiple prosecutions].) However, we review de novo whether the trial court properly applied section 654's prohibition on multiple prosecutions. (*Ibid.*)

Penal Code section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

The language of the statute "addresses multiple punishment and multiple prosecution." (*People v. Correa* (2012) 54 Cal.4th 331, 336 (*Correa*).) "The separate concerns have different purposes and different rules of prohibition." (*Valli, supra*, 187 Cal.App.4th at p. 794.) The "purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." (*Neal v. State of California* (1960) 55 Cal.2d 11, 20 [disapproved of on other grounds in *Correa, supra* 54 Cal.4th at p. 344].) "The multiple prosecution bar, set out in the last

4

sentence of subdivision (a), is a "'procedural safeguard against harassment and is not necessarily related to the punishment to be imposed. . . ." [Citation.]'" (*Correa, supra*, 54 Cal.4th at p. 336.) This case involves the multiple prosecution aspect of section 654.

In *Kellett, supra*, 63 Cal.2d 822, the California Supreme Court "construed section 654's multiple prosecutions bar to apply whenever 'the same act or course of conduct plays a significant part' in two or more offenses, assuming the prosecution in the first case was or should have been aware of all the offenses." (*People v. Homick* (2012) 55 Cal.4th 816, 841.) The Court explained that "[f]ailure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett, supra,* 63 Cal.2d at p. 827, fn. omitted., emphasis added.) "'The *Kellett* rule, while seeking to prevent harassment of defendants, [is] bottomed in large part on a concern for avoiding needless repetition of evidence, and for conserving the resources and time of both the state and the defendant.' [Citations.] Thus the offenses must be transactionally related, and not just joinable . . . . [Citation.]" (*People v. Turner* (1985) 171 Cal.App.3d 116, 129.) "Whether *Kellett* applies must be determined on a case-by-case basis. [Citation.]." (*Valli, supra*, 187 Cal.App.4th at p. 797.)

Juarez contends the prosecution's failure to join the attempted murder charges in the pending gun possession proceeding violated the *Kellet* rule because: (1) the prosecution became aware of Juarez's role in the attempted murders during the gun possession proceeding; and (2) the two offenses arose from the same act or course of conduct.

The record reflects, and the prosecution does not dispute, it became aware of Juarez's role in the attempted murders during the course of the gun possession proceeding. Prior to the preliminary hearing in the gun possession case, law enforcement had confirmed through ballistic tests that Juarez's gun had been used during the freeway shooting. In addition, the victims of the attempted murders had previously identified Juarez as the driver of the vehicle that had chased them onto the freeway.

We must therefore assess whether Juarez has demonstrated that "the same act or course of conduct play[ed] a significant part" in both offenses.  (*Kellett, supra,* 63 Cal.2d at p. 827.)  "Appellate courts have adopted two different tests to determine a course of conduct for purposes of multiple prosecution."  (*Valli, supra*, 187 Cal.App.4th at p. 797.)  "One line of cases finds *Kellett* not applicable where the offenses are committed at separate times and locations."  (*Ibid*. [citing *People v. Douglas* (1966) 246 Cal.App.2d 594; *People v. Ward* (1973) 30 Cal.App.3d 130; and *People v. Cuevas* (1996) 51 Cal.App.4th 620].)

A second line of cases has applied an "evidentiary test" that considers "the totality of the facts and whether separate proofs were required for the different offenses."  (*Valli, supra*, 187 Cal.App.4th at p. 798 [citing *People v. Flint* (1975) 51 Cal.App.3d 333; *People v. Hurtado* (1977) 67 Cal.App.3d 633 (*Hurtado*).)  When applying the evidentiary test, courts generally evaluate whether proving the two offenses requires substantially distinct "evidentiary pictures" and "different witnesses" (*Valli, supra*, 187 Cal.App.4th at p. 798; see also *Hurtado, supra,* 67 Cal.App.3d at p. 636), and whether the "'evidence needed to prove one offense necessarily supplies proof of the other.'"  (*Valli, supra*, 187 Cal.App.4th at p. 799; *Hurtado, supra,* 67 Cal.App.3d at p. 636 [under the "evidentiary" test, two offenses "must be prosecuted together" "if the evidence needed to prove one offense necessarily supplies proof of the other"].)  The test "requires more than a trivial overlap of the evidence."  (*Valli*, *supra*, 187 Cal.App.4th at p. 799.)  "Simply using facts from the first prosecution in the subsequent prosecution does not trigger application of *Kellett*."  (*Ibid*.)

Juarez's section 654 claim fails under either test.  First, the attempted murders and the gun possession offense occurred two days apart, and in different places.  Specifically, the attempted murders occurred on a freeway, at approximately 12:30 a.m. on April 6, 2011; the gun possession occurred in Leos's apartment on the evening of April 8, 2011.

Juarez's claim fares no better under the "evidentiary test."  The record demonstrates that proving the attempted murder charges and the gun possession charge would require different witnesses and substantially distinct "evidentiary pictures."  (*Valli*,

*supra*, 187 Cal.App.4th at p. 799.) To prove Juarez committed the attempted murder offenses, the prosecution had to establish he was responsible for shooting at Martinez's vehicle during the early morning hours of April 6, 2011. At the attempted murder trial, the prosecution relied primarily on the testimony of the victims (Martinez and Avila), the CHP officers who investigated the shootings and bystanders who witnessed the shootings. These witnesses' testimony would have been of limited relevance in the gun possession proceeding, which required the prosecution to show that Juarez was a felon and that he possessed the .9 millimeter weapon recovered from Leos's apartment on April 8th. Had Juarez not pleaded guilty to this charge, the prosecution would have likely relied primarily on documentation establishing Juarez was a felon and the testimony of the officers who arrested Juarez in Leos's apartment. Although evidence that Juarez was found in possession of the weapon used to commit the freeway shootings was introduced at his trial for the attempted murder, this mere overlap in evidence is not sufficient to establish the applicability of the *Kellett* rule.

Moreover, this is not a case where "the evidence needed to prove one offense necessarily supplies proof of the other." (*Hurtado, supra,* 67 Cal.App.3d at p. 636.) The evidentiary showing needed to prove the attempted murder charges – that Juarez was responsible for shooting at Martinez's car on April 6th – would not be sufficient to show he was a felon in possession on April 8, 2011. Likewise, the evidentiary showing necessary to prove he was a felon in possession of a firearm on April 8th would not be sufficient to prove he attempted to commit two murders on April 6th.

Juarez, however, contends this case is indistinguishable from *In re Grossi* (1967) 248 Cal.App.2d 315 (*Grossi*). In *Grossi*, the defendant robbed a gas station with a .38 caliber revolver. At the time of the robbery, he was wearing a grey suit and driving a Plymouth automobile. Several hours after the robbery, police officers observed defendant commit a traffic violation while driving a Plymouth, and attempted to pull him over. Defendant tried to evade the police, but was eventually apprehended. The officers conducted a search of the defendant's vehicle and recovered a .38 caliber revolver and a

grey suit. A complaint was filed charging defendant with armed robbery and possession of a concealable firearm by a felon. The same weapon was specified in each charge.

On the day of trial, the victim of the robbery, who was the prosecution's primary witness, failed to appear. Although the prosecution requested a continuance, the trial court denied the request and announced it intended to dismiss the matter for lack of prosecution unless an immediate disposition could be made. (*Grossi, supra*, 248 Cal.App.2d at p. 318.) The prosecution "felt that some type of disposition was better than having the matter dismissed" and agreed to dismiss the armed robbery count in exchange for a guilty plea on the gun possession charge. (*Ibid*.) Defendant was immediately sentenced on the possession charge. Shortly thereafter, the prosecutor's office re-filed the armed robbery charge. The defendant was subsequently convicted of the armed robbery. In a habeas proceeding, he asserted that the re-filed charge violated section 654's prohibition on multiple prosecutions for related offenses.

The court concluded the prosecution had failed to identify any evidence indicating defendant had begun a "new course of conduct" between the "time of the robbery and the time of the arrest [hours later]." (*Grossi, supra*, 248 Cal.App.2d at pp. 321-322.) The court also found it "significan[t]" that the prosecution initially "joined the two counts in the first prosecution." (*Id*. at p. 322, fn. 8.) In the court's view, this decision demonstrated the prosecution also believed the acts were "'connected . . . in their commission.'" (*Ibid*.)

This case has little in common with *Grossi*. Juarez's gun possession charge did not arise from an arrest made in close temporal proximity to the attempted murders; instead, he was arrested two days later, while sitting in an apartment with an associate. Moreover, in *Grossi*, the prosecution recognized the connection by initially charging the offenses together; here the charges remained separate at all relevant times.

Juarez essentially contends that section 654's multiple prosecution prohibition applies whenever a defendant is charged with illegally possessing a firearm that is later discovered to have been used during a prior offense. The law does not support that conclusion.

8

## DISPOSITION

The judgment is affirmed.


ZELON, J.

We concur:


PERLUSS, P. J.


SEGAL, J.<sup>*</sup>

---

<sup>*</sup>    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.