Filed 6/18/14  P. v. Holbert CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C073721 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F04487) |
| v. | |
| NICHOLAS RYAN HOLBERT, | |
| Defendant and Appellant. | |

Defendant Nicholas Ryan Holbert appeals his convictions for identity theft, using a false identity to gain goods and services, being a felon in possession of a firearm, and illegally possessing ammunition.  He contends the trial court erred in denying his motion to dismiss the information for multiple prosecutions under *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*).  We disagree and affirm the judgment.

BACKGROUND

On June 13, 2012, Sacramento County Sheriff's Deputies Robert French and Sean Berry conducted a stop of defendant's vehicle.  Defendant falsely identified himself to

1

the officers as Bobbie Eberly. The officers learned Bobbie Eberly was on probation and conducted a probation search. In the course of the search, the officers found a nine-millimeter semiautomatic firearm, a black plastic bag containing an unloaded replica .44-caliber revolver, and nineteen .38-caliber bullets. In the trunk of the car were copies of checks, medical records from a dental office that included the personal information of at least 10 different people, identifying information for at least eight different people, and a laptop computer. Defendant was arrested for providing an officer with a false name.

Deputy French gave the items to Detective Albert Kirby of the sheriff's department high tech crimes unit. Detective Kirby and Detective Sean Smith spoke with seven of the people whose information and property was found in the trunk of the car and they indicated they did not know defendant and he did not have permission to have that information. After hearing a recorded jail phone call, Deputy Berry obtained a search warrant and retrieved another firearm from the car, a loaded .38-caliber revolver.

On June 15, 2012, a complaint charged defendant with falsely indentifying himself to a police officer to evade proper identification. (Pen. Code, § 148.9, subd. (a).)[1] Defendant pleaded no contest. He was sentenced to 45 days in county jail and granted three years of informal probation.

On July 2, 2012, the district attorney filed a felony complaint charging defendant with two counts of unlawful possession of a firearm. (§ 29800, subd. (a)(1).) Ultimately, the district attorney, on January 24, 2013, charged defendant by amended information with three counts of unlawful possession of a firearm (§ 29800, subd. (a)(1)), two counts of unlawful possession of ammunition (former § 12316, subd. (b)(1)), 10 counts of unlawful acquisition and retention of personal identifying information (§ 530.5, subd. (b)(2)), and one count each of receiving stolen property (§ 496, subd. (a)), unlawful

---

[1] Undesignated statutory references are to the Penal Code.

acquisition and retention of the personal identifying information of 10 or more people (§ 530.5, subd. (c)(3)), and unlawfully obtaining personal identifying information without consent (§ 530.5, subd. (a)).  The information also alleged defendant served two prior prison terms.  (§ 667.5, subd. (b).)

Defendant filed a motion to dismiss the information as violating the *Kellett* rule against multiple prosecutions.  The trial court found, although the People were aware of the potential additional charges against the defendant, the misdemeanor  and the subsequently charged felonies involved separate proofs, were not part of the same course of conduct, and were not transactionally related.  The trial court also found the evidence of one offense would not necessarily provide proof of the other offenses.  The trial court agreed the People could have joined the charges and filed them together, but they were not required to do so.  Accordingly, the trial court denied defendant's *Kellett* motion. Defendant pleaded no contest to unlawful acquisition of personal identifying information, unlawfully obtaining personal identifying information, possession of a firearm, and unlawful possession of ammunition.  Defendant also admitted the two prior prison term allegations.  Based on the negotiated disposition, the trial court sentenced defendant to an aggregate term of seven years and awarded him 489 days of presentence custody credits. The trial court granted defendant's certificate of probable cause.

## DISCUSSION

Defendant claims the trial court erred in denying his *Kellett* motion to dismiss. Defendant asserts the felony information should have been dismissed because the charges "were related to a course of conduct the state had already prosecuted."  We disagree.

Section 654, subdivision (a) provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

3

While this provision addresses both multiple punishment and multiple prosecution, these "separate concerns have different purposes and different rules of prohibition." (*People v. Valli* (2010) 187 Cal.App.4th 786, 794 (*Valli*).) "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." (*Neal v. State of California* (1960) 55 Cal.2d 11, 20.) At the same time, "[t]he rule against multiple prosecutions is a procedural safeguard against harassment and is not necessarily related to the punishment to be imposed; double prosecution may be precluded even when double punishment is permissible." (*Id*. at p. 21.)

In *Kellett,* our Supreme Court held that section 654 prohibits multiple prosecution when the People either know or reasonably should know that "the same act or course of conduct play[ed] a significant part" in both offenses. (*Kellet, supra*, 63 Cal.2d at p. 827.) There, the defendant was arrested while standing on the sidewalk with a gun in his hand. (*Id*. at p. 824.) He was initially charged with exhibiting a firearm in a threatening manner, a misdemeanor. After a preliminary hearing, he was charged in a separate case with possession of a firearm by a felon, a felony. After pleading guilty to the misdemeanor, he unsuccessfully moved to dismiss the felony under section 654. (*Kellet, supra,* at p. 824.)

Our Supreme Court issued a writ of prohibition preventing defendant's trial. (*Kellett, supra*, 63 Cal.2d at p. 829.) After explaining the "separate and distinct" purposes behind section 654's preclusion of multiple punishment and multiple prosecution, the court noted section 954 "provides for the joinder in a single accusatory pleading of two or more offenses connected in their commission or having a common element of substantial importance in their commission." (*Kellet, supra,* at p. 825.)

Construing sections 654 and 954 in light of the "growing concern" that prosecution of "closely related individual offenses at separate trials may constitute an impermissible denial of that fundamental fairness required by the due process clause of

4

the Fourteenth Amendment," the court stated: "If needless harassment and the waste of public funds are to be avoided, some acts that are divisible for the purposes of punishment must be regarded as being too interrelated to permit their being prosecuted successively. When there is a course of conduct involving several physical acts, the actor's intent or objective and the number of victims involved, which are crucial in determining the permissible punishment, may be immaterial when successive prosecutions are attempted. When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett, supra*, 63 Cal.2d at p. 827, fn. omitted.) Thus, under *Kellett's* interpretation of section 654, the district attorney may not bring the second case against defendant if three conditions exist: (1) the same course of conduct played a significant part in the offenses charged in each case; (2) the prosecution was or should have been aware of the offense charged in the second case while the first case was pending; and (3) all of the offenses charged could have been joined in a single case.

"On appeal, we review factual determinations under the deferential substantial evidence test, viewing the evidence in the light most favorable to the People. [Citation.] We review de novo the legal question of whether section 654 applies. [Citation.]" (*Valli, supra*, 187 Cal.App.4th at p. 794.)

"Whether *Kellett* applies must be determined on a case-by-case basis. [Citation]" (*Valli, supra*, 187 Cal.App.4th at p. 797.) In making this determination, we consider the totality of the facts and whether separate proofs were required for the different offenses. (*Valli, supra,* at p. 798, citing *People v. Flint* (1975) 51 Cal.App.3d 333, 337-338.) "More specifically, if the evidence needed to prove one offense necessarily supplies

5

proof of the other, we concluded that the two offenses must be prosecuted together, in the interests of preventing needless harassment and waste of public funds. [Citation.]" (*People v. Hurtado* (1977) 67 Cal.App.3d 633, 636.) "The evidentiary test of *Flint* and *Hurtado* requires more than a trivial overlap of the evidence. Simply using facts from the first prosecution in the subsequent prosecution does not trigger application of *Kellett.*" (*Valli, supra,* 187 Cal.App.4th at p. 799.) Thus, successive prosecutions are not barred when "[d]ifferent evidentiary pictures are required . . . [or] [d]ifferent witnesses would testify to the events." (*Valli, supra,* at p. 799.)

Defendant contends *Kellett* applies to this case, because "[a]ll the charges at issue stemmed from the same arrest and search, save one gun found in a later search. [Citation.] The district attorney was aware of all the evidence at the time the initial complaint was filed . . . . [¶] Further the same police officers would testify as to both crimes. . . . This is not a case in which each prosecution was based on separate witnesses. [Citation.] Instead it is a case in which the same course of conduct forms a significant part with respect to each set of separately charged crimes." Defendant misconstrues the evidentiary test articulated above.

While it is true that the charges in each case arose from evidence seized during one search and arrest (except for the gun seized as a result of the jail phone call), that does not mean the evidence necessary to prove the charges is the same in each case. The evidence necessary to support the conviction for providing a false identification to law enforcement officers was the officers' testimony and defendant's true identity. Deputies French and Berry were percipient witnesses to that offense. While Deputies French and Berry could also testify to some of the facts necessary to establish all of the offenses, they were peripheral witnesses to the charges relating to unlawful possession of the personal identifying information of others. Other important elements would have to be established by other sources. For example, the many people who were not present at the scene of defendant's arrest and whose stolen identifying information was found in the vehicle

6

were necessary witnesses to those offenses. On the other hand, the evidence necessary to support a conviction for providing false identification to an officer was not relevant or necessary to prove defendant was guilty of possessing the many other's stolen identifying information, possession of firearms, or possession of ammunition. Any potential evidentiary overlap was trivial at best. In any event, the evidentiary pictures for the offenses are entirely distinct.

Barring a subsequent prosecution of defendant for possessing the identifying information, guns and ammunition would not further "the policies underlying section 654 -- preventing harassment of the defendant and the waste of public resources through relitigation of issues." (*People v. Davis* (2005) 36 Cal.4th 510, 558.) Defendant's interest in being free from the harassment of a second trial is nonexistent, because his conviction for providing false identification to an officer resulted from a guilty plea, not a trial. For the same reason, the public's interest in avoiding the waste of resources through relitigation would be "minimal." (*Id*. at pp. 558-559.) "Balanced against these minimal interests [is] the public's weighty interest in prosecuting and punishing" defendant for his myriad of felony offenses. (*Ibid*.) The overwhelming balance of policy considerations tips substantially in favor of prosecuting defendant for unlawfully possessing personal identifying information of others, guns, and ammunition. Accordingly, the trial court did not err in denying the motion to dismiss the felony information.

DISPOSITION

The judgment is affirmed.

     NICHOLSON     , J.

We concur:

     RAYE     , P. J.

     HOCH     , J.

7