Filed 11/21/23 In re S.D. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re S.D., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B326396 (Super. Ct. No. 2019034094) (Ventura County) |
| THE PEOPLE, Plaintiff and Respondent, v. S.D., Defendant and Appellant. | |

S.D. appeals an order transferring him from the juvenile court to an adult court of criminal jurisdiction (Welf. & Inst. Code,[1] § 801, subds. (a) & (e)). He contends (1) the case must be dismissed pursuant to *Kellett v. Superior Court* (1966) 63 Cal.2d

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

822 (*Kellett*), and (2) there was no substantial evidence to support the transfer order.  We affirm.

### FACTS AND PROCEDURAL HISTORY

*The 2003 petition—offenses against K.B. and F.G.*

In 2003, S.D. admitted two counts in an amended section 602 petition alleging he sexually assaulted two girls, K.B. and F.G. (Pen. Code, §§ 288.5, 289, subd. (a)(1)).  The offenses occurred between January 1, 2001, and September 30, 2002.  S.D. was about 15 years old and the girls were under 12 years old.  He was a youth leader and oversaw a church music group in which the girls participated.  He used an elaborate scheme to convince the girls that he was a talent agent and coerced them to perform sexual acts.  S.D. committed these acts at the church they attended.

During the investigation of the sexual abuse against K.B. and F.G., S.D.'s sister (Sister)[2] accused him of molesting her.  However, she later recanted.  Child Protective Services investigated Sister's allegations, but no charges were filed.

S.D. was declared a ward of the court and ordered into suitable placement.  He was placed at a group home, where he participated in 18 months of sex offender treatment.  In December 2004, his suitable placement order was vacated, and he successfully completed probation in 2006.

*The 2020 petition—alleged offenses against S.D.'s sister*[3]

In 2019, Sister, who was then in her mid-20s, was participating in therapy when she recalled S.D. had repeatedly

---

[2] Because S.D.'s sister has the same initials, we refer to her as "Sister" to avoid confusion.

[3] The facts are taken from the probation report.

sexually abused her about 16 years earlier. She texted S.D., who was then 32 years old. S.D. apologized for touching her inappropriately and calling her his "slave."

Sister had flashbacks and remembered S.D. molesting her when she was as young as six years old. She estimated she was forced to perform oral sex 100 times between the ages of seven and 10. She estimated she was forced to have vaginal intercourse 10 times between the ages of eight and 10. She recalled one "vivid" memory that occurred in the garage of their home when she was eight years old. S.D. forced her to perform oral sex and have vaginal intercourse with him. When she refused, he threatened to "push the button," which meant that he was going to kill her.

Sister did not tell anyone at the time about the ongoing sexual abuse that occurred in their home because she was scared that S.D. would kill himself, hurt her, or hurt their parents. She recalled S.D. kept a steak knife hidden in a closet and would hold it up to his own neck or her neck or thigh to make sure she would not report him.

Sister reported the abuse to law enforcement in 2019. She made a pretext phone call, during which S.D. apologized numerous times and admitted touching her private parts. S.D. admitted sexually assaulting her in the closet, garage, and his room. He said these incidents happened around the same time he was abusing K.B. and F.G. between 2001 and 2002.

S.D. was arrested. He admitted to police detectives that he touched Sister's vagina and that he threatened to kill himself if she reported him. He said he kept a butter knife in the closet and would show it to Sister, telling her that he would slice himself if she told their parents. He also admitted he would

3

threaten to "press his button" while pointing to his neck, which meant that he would kill himself.

One week prior to S.D.'s arrest, Sister told her parents about the sexual abuse for the first time. She did not report the abuse to them when S.D. was arrested as a juvenile for the crimes against K.B. and F.G.

The Ventura County District Attorney filed an amended petition under section 602, alleging that S.D. committed three counts of forcible rape (Pen. Code, § 261, subd. (a)(2)), three counts of forcible oral copulation (Pen. Code, former § 288a, subd. (c)(2)), and two counts of anal or genital penetration with a foreign object (Pen. Code, § 289, subd. (a)(1)). As to each count, the petition also alleged that the victim was under the age of 18 when the crime occurred and that the prosecution commenced before her 40th birthday (Pen. Code, § 801.1, subd. (a)).

Kellett <em>motion proceedings</em>

S.D. filed a *Kellett* motion to dismiss the case, arguing that the prosecution was aware or should have been aware that the crimes against Sister involved the same course of conduct as the crimes against K.B. and F.G., such that all the offenses needed to be prosecuted in 2003. (*Kellett*, *supra*, 63 Cal.2d at p. 827.)

At the hearing, the juvenile court denied the *Kellett* motion without prejudice. The court explained that it appeared that though Sister was in a "group of potential victims back in the early 2000's, that she recanted and denied being a victim of any kind of misconduct at that time, and therefore, there would not have been an opportunity for the People to have presented the case involving her."

*Transfer motion proceedings*

In May 2020, the prosecution moved to transfer the case to an adult court of criminal jurisdiction (§ 707, subd. (a)(2)). At the hearing, the prosecution relied on a report from psychologist Dr. Anthony Urquiza and the probation report. Dr. Urquiza's report evaluated the five criteria for transfer under section 707, subdivision (a)(3) and concluded that S.D.'s case "should be transferred to the adult legal system."

At the hearing, Dr. Urquiza testified that the criterion regarding the degree of criminal sophistication exhibited by S.D. weighed in favor of transfer to an adult court. Dr. Urquiza testified S.D. "engaged in a patterned behavior that included a tremendous amount of forethought." As an example, Dr. Urquiza noted that in the 2003 case, S.D. prepared himself by bringing a black bag of props that he used to coerce K.B. and F.G. into sexual conduct. In the crimes alleged against Sister, the doctor testified that S.D. exhibited sophistication in the way he avoided detection. He noted that S.D. would wait for opportunities when he and Sister were alone to sexually molest her and chose locations in the house that would conceal his activities. Moreover, the prolonged nature of the sexual abuse without detection inferred there was "[s]ome effort to conceal, and that involves planning." Dr. Urquiza also testified that S.D. used threats, including threatening to "push the button" and storing a knife in the closet, to coerce Sister into sexual acts and to keep her from reporting.

With respect to whether S.D. could be rehabilitated prior to the expiration of the juvenile court's jurisdiction, Dr. Urquiza opined that S.D. needed treatment, which would take several years, and that there would be insufficient time for him to

5

complete such treatment under the juvenile court's jurisdiction. The doctor observed that after S.D.'s previous group home placement, S.D. did not engage in the recommended follow-up treatment.  Dr. Urquiza also testified that S.D. exhibited a general lack of veracity and remorse, and that he minimized the severity and frequency of his sexual victimization of Sister. Moreover, Dr. Urquiza was concerned with S.D.'s current involvement in a youth ministry group (Youth Empowerment Society), considering S.D.'s history of molesting young girls when he was in a "roughly parallel" position with a youth music group in 2001 to 2002.  Dr. Urquiza was also concerned with S.D.'s connection to the adult film industry and marriage to someone in the pornography industry because S.D. had previously identified excessive use of pornography as an issue for him.

With respect to the circumstances and gravity of the present offense, Dr. Urquiza opined this criterion supported the transfer to an adult criminal court of jurisdiction.  The doctor testified about the level of harm Sister suffered because of S.D.'s sexual abuse.  Sister had a "pattern of devastating and unremitting mental health symptoms," which included psychiatric hospitalizations, suicide attempts, and problems in relationships.

The defense presented a report from their expert psychologist Dr. Gary Zinik and psychological assessments from two other psychologists.  Dr. Zinik opined that S.D.'s case should remain in the juvenile court.  He testified that he believed S.D. was rehabilitated, noting that S.D. completed a treatment program, went on to become a "pro-social adult," and did not commit further crimes.

At the time of the transfer hearing, the evidentiary standard of proof was a preponderance of evidence. Applying this standard, the juvenile court found the prosecution met its burden of proof and ordered the case transferred to a court of criminal jurisdiction.

Effective January 1, 2023, Assembly Bill No. 2361 (2021-2022 Reg. Sess.) (Assembly Bill 2361) amended section 707 to change the evidentiary standard of proof for a juvenile transfer. Section 707 now provides that a minor may be transferred from the juvenile court to a court of criminal jurisdiction only where the court finds clear and convincing evidence that the minor is not amenable to rehabilitation under the juvenile court's jurisdiction. (§ 707, subd. (a)(3), as amended by Stats. 2022, ch. 330, § 1.) The case was returned to the juvenile court for a new hearing to determine transfer to a criminal jurisdiction.

At that hearing the juvenile court considered the evidence presented at the prior transfer hearing. The court applied the new clear and convincing standard of proof and ordered the case transferred to the superior court for criminal proceedings. The court considered all five transfer criteria under section 707, subdivision (a)(3) and found the prosecution met their burden with respect to three criteria—the degree of criminal sophistication, whether S.D. could be rehabilitated prior to the expiration of the juvenile court's jurisdiction, and the circumstances and grievous nature of the alleged offenses. The court noted that of "the three elements . . . degree of sophistication and circumstances of gravity of the offense are probably the most overwhelming, most concerning to the Court."

7

DISCUSSION

Kellett *motion*

S.D. argues the juvenile court erred when it denied his *Kellett* motion. We disagree.[4]

Under Penal Code section 654, an "acquittal or conviction and sentence under any one [provision of the law] bars a prosecution for the same act or omission under any other." In *Kellett*, our Supreme Court held that where "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett*, *supra*, 63 Cal.2d at p. 827.) We review de novo the issue of whether *Kellett* and Penal Code section 654 barred prosecution of the 2020 petition. (*People v. Valli* (2010) 187 Cal.App.4th 786, 794 (*Valli*).)

Courts have developed two tests under *Kellett* to determine whether multiple offenses occurred during the same course of conduct and are therefore subject to the multiple prosecution bar. (*People v. Sanchez* (2020) 49 Cal.App.5th 961, 986.) Under one line of cases, multiple prosecutions are not barred if the offenses were committed at different times and at different places. (*Ibid*; *People v. Cuevas* (1996) 51 Cal.App.4th 620, 624.) Under a second line of cases, two offenses must be prosecuted together if

---

[4] The Attorney General contends S.D. forfeited his claim by failing to press for a ruling in the trial court. Because we address the merits, we do not address the forfeiture argument.

the evidence needed to prove one offense necessarily supplies proof of the other. (*Sanchez*, at p. 986; *People v. Hurtado* (1977) 67 Cal.App.3d 633, 636.)

Here, *Kellett* is inapplicable under either test. The events giving rise to both cases occurred during the same time frame of 2001 to 2002, but the alleged offenses in this case involve a different victim, Sister, and they occurred when she and S.D. were alone in their own home. In contrast, the offenses against K.B. and F.G. occurred at church. (See *People v. Ward* (1973) 30 Cal.App.3d 130, 136 [*Kellett* inapplicable where the defendant committed sexual offenses "at different locations, at different times, against different victims, and with different objectives" even when the offenses took place the same night].)

Nor does evidence of the crimes S.D. committed against K.B. and F.G. supply proof of the crimes he allegedly committed against Sister. The 2003 case involved S.D. in a position of leadership in a church music group and creating an elaborate scheme to coerce K.B. and F.G. into sexual acts. But in this case, S.D. allegedly threatened harm to himself, Sister, or their parents to coerce Sister into sexual acts. Moreover, the use of facts from the 2003 case to prosecute the present case does not trigger the application of *Kellett*. (See *Valli*, *supra*, 187 Cal.App.4th at p. 799 ["Simply using facts from the first prosecution in the subsequent prosecution does not trigger application of *Kellett*"].)

In our view, *Kellett* and Penal Code section 654 do not bar the prosecution of the instant offenses involving Sister because the prosecutor in the 2003 case was " ' " 'unable to proceed [with the current case] at the outset because the additional facts necessary to sustain [the] charge have not occurred or have not

9

been discovered despite the exercise of due diligence.' " ' [Citation.]" (*People v. Davis* (2005) 36 Cal. 4th 510, 558.) The facts necessary to prosecute the offenses involving Sister were not disclosed by Sister to the police until 2019. The record reflects that despite due diligence, there were insufficient facts in 2003 to sustain the allegations that S.D. molested Sister. Notably, at the time, Sister recanted her allegations, and Child Protective Services investigated the matter, but no charges were filed. We reject S.D.'s argument that there was a lack of due diligence in discovering the sexual abuse against Sister. The *Kellett* motion to dismiss was properly denied.

*Substantial evidence*

S.D. contends the transfer order must be reversed because there was no substantial evidence to support the juvenile court's finding that he was not amenable to rehabilitation under the juvenile court's jurisdiction. We again disagree.

As amended in January 2023, section 707, subdivision (a)(3) provides that to "find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." In making its decision, the court shall consider the following five criteria: (A) "The degree of criminal sophistication exhibited by the minor," (B) "Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction," (C) "The minor's previous delinquent history," (D) "Success of previous attempts by the juvenile court to rehabilitate the minor," and (E) "The circumstances and gravity of the offense alleged in the petition to have been committed by the minor." (§ 707, subd. (a)(3)(A)-(E).) "If the court orders a transfer of jurisdiction, the

10

court shall recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court."  (§ 707, subd. (a)(3).)

The minor's amenability to rehabilitation under the juvenile court's jurisdiction is "the ultimate question for the court to decide."  (*In re E.P.* (2023) 89 Cal.App.5th 409, 416.)  "Nevertheless, in deciding that question, the amendment requires the court to consider the same five factors listed in the previous version [of section 707.]"  (*Ibid.*)  Now, however, "[t]he analysis of the five criteria set forth in the statute should be focused through the lens of amenability to rehabilitation."  (*In re S.S.* (2023) 89 Cal.App.5th 1277, 1288.)

We review the juvenile court's order transferring a case to an adult court of criminal jurisdiction for abuse of discretion. (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 680.)  And we review the trial court's factual findings as to the five fitness criteria under section 707, subdivision (a)(3)(A)-(E) for substantial evidence.  (*People v. Superior Court* (*Jones*), at p. 681.)  Under that deferential standard, we review the record most favorably to the judgment (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298) and give deference to how the trier of fact evaluated the credibility of witnesses, resolved conflicts in the evidence, and derived reasonable inferences from the evidence. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)  The testimony of a single witness is sufficient to constitute substantial evidence.  (*People v. Scott* (1978) 21 Cal.3d 284, 296.)

The juvenile court here did not abuse its discretion in ordering the transfer of S.D.'s case to an adult court of criminal

11

jurisdiction. In determining S.D. was not amenable to rehabilitation while under the juvenile court's jurisdiction, the court based its ruling on three criteria weighing in favor of the transfer and emphasized the degree of criminal sophistication exhibited by S.D. and the gravity of the offenses. Substantial evidence supports these findings.

Dr. Urquiza testified that S.D. exhibited criminal sophistication in the way he planned his crimes and avoided detection. For example, S.D. waited for opportunities when he was alone with Sister and chose locations in their home where he could avoid detection. S.D. also threatened Sister by creating the phrase "push the button" and using a knife, which he stored in a closet, to coerce Sister into sexual acts and to ensure she stayed quiet. Moreover, the prolonged nature of the abuse without detection indicates that S.D. put effort into planning his crimes.

Substantial evidence also supports the juvenile court's finding that S.D. could not be rehabilitated prior to the expiration of the juvenile court's jurisdiction. In evaluating this criterion, the "juvenile court may give weight to any relevant factor, including, but not limited to, the minor's potential to grow and mature." (§ 707, subd. (a)(3)(B)(ii).) Here, if the case remained in the juvenile court, the court's jurisdiction would expire two years after the sustained petition. (§ 607.) However, Dr. Urquiza opined that treatment for S.D. would take several years and there was insufficient time for such treatment before the juvenile court's jurisdiction expired. Dr. Urquiza also testified that despite completion of sex offender treatment years ago, S.D. did not participate in the recommended follow up treatment. He further noted that S.D. continued to exhibit a general lack of

12

veracity and remorse, and S.D. minimized the severity and frequency of the crimes against Sister.

Dr. Urquiza also identified S.D.'s involvement with the Youth Empowerment Society and the adult film industry as a concern given his criminal history. According to the probation report, progress reports from S.D.'s group home indicated that one key to his success would be to avoid sexually arousing triggers and avoid being in "a manipulative controlling position." Nonetheless, the doctor opined that S.D.'s involvement in the Youth Empowerment Society paralleled his previous involvement in the church music group, in which he used a position of leadership to manipulate and coerce his younger victims. S.D. was also connected to the adult film industry and married to an adult film actress, despite his self-reported addiction and previous admission that pornography influenced his behavior when he committed the 2003 offenses. The juvenile court apparently found Dr. Urquiza's testimony credible. It could reasonably infer from these facts that S.D. had not grown and matured years after receiving treatment, and that two year's treatment under the juvenile court's jurisdiction was insufficient to treat S.D.'s underlying behavioral issues.

Substantial evidence also supports the juvenile court's finding that the circumstances and gravity of the offense weighed in favor of the transfer to adult court. The seriousness of S.D.'s alleged offense is not in dispute. S.D. allegedly sexually abused Sister for a prolonged period and threatened to hurt himself and Sister if she did not acquiesce. Dr. Urquiza's testimony and report detailed the "severe and long-lasting" psychological harm Sister suffered because of the abuse. Dr. Zinik also acknowledged the gravity and seriousness of the offenses.

13

Because substantial evidence supports the findings on the three fitness criteria weighing in favor of transfer, the court did not abuse its discretion in finding S.D. was not amenable to rehabilitation under the juvenile court's jurisdiction.

DISPOSITION

The transfer order pursuant to section 801 is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


CODY, J.

Ferdinand Inumerable, Judge

Superior Court County of Ventura

_____

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.